**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER (Nevada Bar No. 7332)
Email: mfeder@dickinsonwright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113
Tel:  (702) 550-4440
Fax:  (844) 670-6009

**ARNOLD & PORTER LLP**
EVAN M. ROTHSTEIN
Email: evan.rothstein@arnoldporter.com
PATRICK B. HALL
Email: patrick.hall@arnoldporter.com
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202
Tel: (303) 863-1000
Fax: (303) 832-0428

**ARNOLD & PORTER LLP**
MICHAEL J. GERSHONI
Email: michael.gershoni@arnoldporter.com
601 Massachusetts Ave., NW
Washington, District of Columbia 20001
Tel: (202) 642-5000
Fax: (202) 942-5999
(*Pro Hac Vice* Application to be submitted)

*Attorneys for Defendants Stadium Technology Group, Inc.*
*and GVC Holdings, PLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PURE PARLAY, LLC a Nevada Limited Liability Company,<br><br>                    Plaintiff,<br><br>        v.<br><br>STADIUM TECHNOLOGY GROUP, INC., a Nevada Corporation, and GVC HOLDINGS, PLC, a company incorporated in the Isle of Man,<br><br>                    Defendants. | Case No. 2:19-cv-00834-GMN-BNW<br><br>**GVC HOLDINGS, PLC'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS** |

1


DICKINSON WRIGHT
ATTORNEYS AT LAW

Defendants Stadium Technology Group, Inc. ("STG") and GVC Holdings, PLC ("GVC"), by and through their undersigned attorneys, respectfully move this Court for entry of an order dismissing Plaintiff Pure Parlay, LLC's ("Plaintiff") Second Amended Complaint ("Second Amended Complaint") as to STG and GVC for failure to state a claim pursuant to Fed. R. Civ. P. Rule 12(b)(6) and for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) with prejudice. This Motion is made and based on the pleadings and papers on file in this matter, the memorandum of points and authorities below, the Declaration of Michael J. Gershoni[1] and the exhibits attached thereto.

## I.    INTRODUCTION

On February 5, 2020, the Court dismissed Plaintiff's June 7, 2019 First Amended Complaint for Patent Infringement ("First Amended Complaint") of U.S. Patent No. 9,773,382 (the "'382 Patent") for failure to state a claim based on pleading deficiencies. *See* Dkt. # 34. The Court's dismissal was without prejudice which afforded Plaintiff the opportunity to once again correct deficiencies in its pleading. On February 24, 2020, Plaintiff filed a Second Amended Complaint attempting to fix these deficiencies by adding a claim chart purportedly indicating how Defendants' software practices each element of the allegedly patented method. *See* Dkt. # 37. But just as the previous amendments were not helpful, the Second Amended Complaint does not state a claim for relief. Even if Plaintiff had fixed the basic pleading deficiencies, however, dismissal is still warranted because Plaintiff's patent infringement allegations are based on an invalid and unenforceable patent. Accordingly, the Second Amended Complaint should now be dismissed under Fed. R. Civ. P. Rule 12(b)(6) *and* 12(c), in its entirety with prejudice.

Dismissal is appropriate on at least three separate grounds. *First*, the Second Amended Complaint (and accompanying exhibits) fails to indicate how Defendants' software practices each element of the patented method. Instead, to meet several required claim elements, Plaintiff relies on attorney argument, conjecture, and unreasonable inferences to fill in the factual blanks. But a complaint cannot survive without facts, which—as even Plaintiff's purported claim chart evidences—do not exist to support the allegation that Defendants' software practices each element

[1] Ex. 1.



of the patented method. *Second*, the patented method requires performance by multiple actors, including a third-party bettor, and Plaintiff fails to allege that the steps performed by an actor other than Defendants is attributable to Defendants. This lack of sufficient allegations as to direct infringement also doom Plaintiff's indirect infringement and willful infringement claims. *Finally*, regardless of Plaintiff's deficient allegations, no further pleading should be permitted because the '382 Patent merely claims utilizing general computers to follow a set of rules for multi-game sports wagering and is thus patent-ineligible under 35 U.S.C. § 101.

## II.    LEGAL STANDARDS

### A.    *Twombly and Iqbal Plausibility Guidelines*

"To meet the plausibility standard, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Merely pleading facts that are consistent with liability or stating legal conclusions is not sufficient." *Artrip v. Ball Corp.*, 735 F. App'x. 708, 714 (Fed. Cir. 2018) (non-precedential) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Nalco Co. v. Chem-Mod LLC,* 883 F.3d 1337, 1347-8 (Fed. Cir. 2018) (applying the standards set forth in *Iqbal* and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) to claims of direct infringement).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").



**B.**    *Direct Infringement Under 35 U.S.C. § 271(a)*

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).  The latter circumstance, when all steps of a claimed method are merely attributable to a single entity, is often referred to as divided or joint infringement.  *See id.*

To determine whether an entity directs or controls others' performance, courts look to general principles of vicarious liability.  *Id.*  An actor is liable for infringement if they act through an agent or contract with another to perform one or more steps of a claimed method.  *Id.* at 1023.  Similarly, an actor may be liable when they "condition[] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establish[] the manner or timing of that performance."  *Id.*

**C.**    *Patentable Subject Matter Under 35 U.S.C. § 101 and the Alice progeny*

Properly granted patents claim technological inventions, not abstract ideas or mere implementation of abstract ideas with generic computer technology.  Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  Courts, however, "have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  The concern behind these excepted categories is "one of preemption"—if an inventor could obtain patent protection over these "building blocks of human ingenuity," then the patent scheme would work to undermine, not promote, future innovation. *Id.* at 216.

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set forth a two-step "framework for distinguishing patents that claim laws of

nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355 (2014).  First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one").  *Id*.  If so, the next step is to look for an "'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself' ("step two").  *Id*.  The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

> **D.** ***Patentable Subject Matter is a Threshold Legal Issue Appropriately Decided on a Motion for Judgment on the Pleadings Pursuant to Rule 12(c)***

"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation and internal quotation marks omitted).  "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."  *Id*. (citation and internal quotation marks omitted).

Subject matter eligibility under § 101 is a "threshold inquiry" and a question of law.  § 101 challenges are thus amenable to resolution on motions for judgment on the pleadings.  *See, e.g., In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd*, *Bilski v. Kappos*, 561 U.S. 593 (2010); *OIP Techs, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-64 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352-55 (Fed. Cir. 2014).  Moreover, courts, including those in this District, recognize that § 101 challenges can be resolved without undertaking claim construction. *See e.g., Curb Mobility, LLC v. Kaptyn, Inc., et al.,* No. 2:18-cv-02416 at 10 (Jan. 21, 2020) (Dkt #62); *Global Cash Access, Inc. v. NRT Technology Corp.*, 2016 WL 1181669 at *4 (D. Nev. March 25, 2016) ("Plaintiff's general reference to disputed claim terms fail to demonstrate that the Court cannot ascertain 'the basic character of the [patent's] subject matter' without claim construction") (internal citations omitted).

**III.    Plaintiff's Second Amended Complaint Is Fatally Deficient Because It Again Fails to Plausibly Allege Direct Infringement[2]**

The Second Amended Complaint fails to make plausible allegations of direct infringement under the standard set forth in *Twombly/Iqbal*.  Specifically, Plaintiff's Second Amended Complaint suffers from two fatal pleading flaws: (1) it fails to indicate how Defendants' software practices each element of the *only* independent claim of the '382 Patent; and (2) Plaintiff provides no allegations that performance by a user of Defendants' software is attributable to Defendants.

**A.    *Plaintiff Fails to Plausibly Allege that Defendants' Software Practices Each Element of the Only Independent Claim***

The '382 Patent contains a single independent claim, which requires certain conditions exist:

> 1. A computer-implemented method for providing increased wagering flexibility to an individual bettor in the process of making a multiple armed event wager from an electronic wager input device having a display, the method comprising steps of:
>
> …
>
> determining baseline odds for said multiple armed wager, said baseline odds based upon application of said equal starting shade values to each of the selected plurality of teams competing in the respective events;
>
> …
>
> calculating a minimum odds value of all teams winning, for purposes of the wager, when a maximum positive shade is applied to the initial line of every team included in the wager;
>
> calculating the maximum odds of all teams winning, for purposes of the wager, when a maximum negative shade is applied to the initial line of every team included in the wager;
>
> choosing, by said bettor via said display, a quantity of points to shade the initial lines of each of said respective selected teams and choosing a positive or negative

---

[2] Because Plaintiff fails to plausibly allege direct infringement, its allegations that Defendants have indirectly infringed the '382 Patent via both induced and contributory infringement, *see* Dkt. # 37 at ¶ 14, likewise fail.  "To prevail on an indirect patent infringement claim, the patentee must first establish that there has been direct infringement." *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-cv-1058-JLS-DHB, 2016 WL 903681, at *5 (S.D. Cal. Feb. 8, 2016) (internal citations omitted).  For the same reason, Plaintiff's allegations of willful infringement of the '382 Patent, also fail.  *See e.g., AlterG, Inc. v. Boost Treadmills LLC*, No. 18-cv-07568-EMC, 2019 WL 2191342, at *5 (N.D. Cal. May 20, 2019).  "[A] finding of direct infringement is a prerequisite for willful infringement."

DICKINSON WRIGHT
ATTORNEYS AT LAW

shading direction in which to apply said chosen quantity of points to each said starting line, wherein said step of choosing results in a bettor-defined redistribution of said chosen quantity of points; [….]

'382 Patent at Claim 1. But—stripped of Plaintiff's conclusory allegations—the Complaint provides no factual content that would allow the Court to draw a reasonable inference that Defendants' software satisfies these claim elements.

For the first limitation (*i.e.*, "determining baseline odds for said multiple armed wager…"), Plaintiff asserts that it "can be inferred *as the only way* to [sic] for Defendants' mobile software application to process the customer shading is to first calculate baseline odds as the starting point *by distributing the shade values equally* to each competing team." *See* Dkt. # 37-3 at 2 (emphasis added). Not only does Plaintiff fail to plead factual support for this contention, it is directly contradicted by the '382 Patent itself. Indeed, the '382 Patent contemplates baseline odds based on *non-shaded* beginning point spreads. *See* '382 Patent, 13:58-64 ("Just a few examples of the type of pertinent information that should be communicated (e.g., displayed on a bettor device) viewable, and in some cases modifiable and selectable, include: … (2) *a non-shaded beginning point spread for each available team (i.e., the baseline odds)*[.]") (emphasis added); 14:11-13 ("Continuing with our exemplary odds table, again provided for discussion purposes only, *the baseline odds 402 (i.e., no shade applied to any team)* may be displayed[.]") (emphasis added). Thus, how can one simply infer—as Plaintiff suggests—"the only way" to calculate baseline odds involves first distributing shade values where the patent acknowledges the existence of baseline odds without shading? One cannot. Without this blind inference (which is improper in any event), there are no allegations this element is practiced, let alone *factual support* that is required.

For the second and third limitations, (*i.e.*, "calculating a minimum odds value … when a maximum positive shade is applied" and "calculating the maximum odds … when a maximum negative shade is applied"), Plaintiff merely parrots the claim language and again states that infringement "can be inferred." *See* Dkt. # 37-3 at 2 ("this can be inferred as the only way to process the customer shading is to initially calculate the minimum odds value for all teams winning when a maximum positive shade is applied to the initial starting line of every team included in the



wager, along with initially calculating the maximum odds of all teams winning when a maximum negative shade is applied to the initial starting line of every team included in the wager."). But, the Court is not required to accept as true Plaintiff's allegations where, as here, they are no more than "merely conclusory, [an] unwarranted deduction[] of fact, [and an] unreasonable inference[]." *See Sprewell*, 266 F.3d at 988.[3] As with the above limitation, Plaintiff relies purely on impermissible attorney-argument and conjecture to fill in the blanks and therefore there is no reasonable inference that can be made that Defendants' software satisfies these claim elements.

For the fourth limitation (*i.e.*, "choosing a positive or negative shading direction"), Plaintiff relies on **Screenshot 3** to support the assertion that:

> with Defendants' Mobile Software Application, the "shading" function is accomplished, via the mobile device display touchscreen, by the Bettor choosing among the provided list (i.e. "Select Point to Buy), which functions to enable the Bettor to choose, via the display, a quantity of points to shade the initial lines of each of the respective selected teams, and subsequently choose to positively or negatively shade each starting line, thereby redistributing the chosen quantity of points, etc.

*See* Dkt. # 37-3 at 3. But, Plaintiff's assertion that a bettor may "subsequently choose to positively or negatively shade each starting line" after selecting points to buy is directly contradicted by Plaintiff's own purported support. Specifically, **Screenshot 3** shows that at the time of buying points, there is no subsequent choice to be made regarding the direction of shading. Instead, to the extent any points are purchased, shading is simultaneously applied in the positive direction only, as seen below:

---

[3] Although not necessary to determine that Plaintiff's allegations do not plausibly allege infringement of these claim limitations where, as here, they are based on attorney-argument, Plaintiff's inference with respect to the limitation requiring applying a maximum negative shade is nevertheless suspect. For example, Plaintiff's "**Screenshot 3** of Defendants' Mobile Software Application" ("**Screenshot 3**") refutes the inference that maximum odds are calculated "when a maximum negative shade is applied" by showing that no negative shading is applied. Rather, only two options are provided to a bettor: applying no shade (*i.e.*, "Buy none") or applying a positive shade (*e.g.*, "Buy 1").

8



EXHIBIT 3    Stadium Screenshot 3

*See also* Dkt. #37-3 at 6 (showing the spread increasing in the positive direction from -1½ to +1½ at the time of purchasing points). Because Plaintiff's own allegations directly contradict its only purported factual "support" for this claim limitation, the Court should again disregard Plaintiff's allegations as attorney argument and conjecture.

In sum, for at least a third of the '382 Patent's independent claim limitations, Plaintiff's infringement allegations are conclusory statements and/or unreasonable inferences that are contradicted by Plaintiff's own purported factual support. Thus, despite permitting Plaintiff multiple attempts to plausibly allege direct infringement, Plaintiff has continuously failed to meet



the applicable pleading standards.  In view of this, the only reasonable inference to be made at this juncture is that Plaintiff cannot produce a well-pleaded complaint.

**B.      *Plaintiff Makes No Plausible Allegations that Third-Party Performance is Attributable to Defendants***

Plaintiff's amended infringement allegations expose an additional pleading problem—a failure to address the '382 Patent's divided infringement problem that warrants dismissal.

The '382 Patent contains a single independent claim, which requires performance by a third-party bettor, *i.e.*, a user or person *other* than Defendants:

> 1. A computer-implemented method for providing increased wagering flexibility to an individual bettor in the process of making a multiple armed event wager from an electronic wager input device having a display, the method comprising steps of:
>
> …
>
> *choosing, by said bettor* via said display, *a quantity of points to shade the initial lines of each of said respective selected teams and choosing a positive or negative shading direction in which to apply said chosen quantity of points* to each said starting line, *wherein said step of choosing results in a bettor-defined redistribution of said chosen quantity of points*; [….]

'382 Patent at Claim 1 (emphasis added).  Plaintiff acknowledges that a bettor is required to perform these functions.  *See, e.g.*, Dkt. #37 at ¶ 10 ("The line for each team is individually selectively point-shaded in accordance *with the wishes of the bettor*[.]") (emphasis added); Dkt. #37-3 at 3 ("[T]he 'shading' function is accomplished, via the mobile device display touchscreen, by the Bettor choosing among the provided list[.]").  Yet, the only allegations in the Second Amended Complaint with respect to performance by a third-party bettor are that Defendants' software "enables" or "allow[s]" bettors to buy points or move the line, respectively.  Dkt. #37 at ¶ 11; Dkt. #37-3 at 1, 3.

These allegations are not sufficient to form the basis of a reasonable inference that Defendants exercise any direction or control over the bettor, or that Defendants and bettor form a joint enterprise, as required by Federal Circuit precedent.[4]  *See Akamai*, 797 F.3d at 1023.  Indeed,

---

[4] Moreover, as discussed in Section III.A, *supra*, Plaintiff has failed to sufficiently allege facts to support the inference that Defendants' software—regardless of whether a bettor utilizes it in the

DW
DICKINSON WRIGHT
ATTORNEYS AT LAW

Courts routinely dismiss claims under the theory that merely enabling or allowing an allegedly infringing use by a third-party is sufficient to adequately allege joint direct infringement. *See, e.g.,* *Winet Labs LLC, v. Apple Inc.*, No. 5:19-cv-02248, Op. at 7 (N.D. Cal. January 24, 2020) (Dkt. #43) ("The Court is most concerned with Claim 1's requirement that some sort of 'election' occur; does this election occur automatically or is some sort of user engagement required? … But mustn't the user then elect which coordinating node applies?  If yes, then some user engagement is required, and Plaintiff must show joint infringement in order to claim direct infringement by Defendant."); *Hitachi Kokusai Elec., Inc., et al., v. ASM Int'l, N.V., et al.*, No. 17-cv-06880, Op. at 4-5 (N.D. Cal. July 23, 2018) (Dkt. #53) (granting motion to dismiss for failure to state a claim for joint direct infringement where plaintiff alleged only that the accused products have "been configured and operated by [Defendants] to perform the [claimed] method….").

The Federal Circuit has outlined what is required to the meet pleading standards for joint infringement—and Plaintiff did not meet it here.  In *Nalco Co. v. Chem-Mod, LL,* the Court held that allegations of joint direct infringement that included specific allegations of infringing performance being "requisitioned by Defendants" and "conditioned on obtaining monetary benefits" were sufficient for pleading joint infringement.  883 F.3d 1337, 1353 (Fed. Cir. 2018). Specifically, the Court allowed the case to proceed because the defendants in *Nalco Co.* made multiple factual allegations regarding the defendants' direction or control of the allegedly infringing conduct, including an allegation that "[e]ach of these steps is taken pursuant to the express direction and control of the Defendants."  *Id.* at 1352 (citing plaintiff's operative complaint).

Plaintiff's allegations here do not come anywhere close to the allegations in *Nalco Co.*, nor could they.  Unlike the plaintiff in *Nalco Co.*, Plaintiff made no allegations that Defendants expressly direct bettors to choose "a quantity of points to shade the initial lines of each of said respective selected teams." *See* '382 Patent at Claim 1.  Plaintiff further makes no allegations that Defendants exercise any control over bettors' decisions, including the decision to shade generally,

---

manner prescribed in the Second Amended Complaint—is capable of performing the claimed method steps.



or that the benefit of using Defendants' software is conditioned on bettors shading any wagers. Plaintiff's failure to provide any allegations in this regard thus necessarily means that it failed to adequately allege direct infringement by Defendants of any claim of the '382 Patent.

## IV.     The '382 Patent is Invalid as Patent-Ineligible under 35 U.S.C. § 101

The Second Amended Complaint should also be dismissed under Fed. R. Civ. P. Rule 12(c) in its entirety and with prejudice because the '382 Patent fails to qualify for patent protection under 35 U.S.C. § 101.  No amount of repleading can fix this.

The United States Supreme Court, the Court of Appeals for the Federal Circuit, and this District Court have repeatedly warned that longstanding commercial practices and products of human mental processes are unpatentable abstract ideas, even when implemented in a particular technological environment.  *See, e.g.*, *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2352, 2354 (2014) (internal quotation marks and citation omitted).  The Federal Circuit and this District Court have further held that patents that are directed to rules of a game are comparable to these commercial practices that have been consistently found patent-ineligible.  *See, e.g.*, *In re Smith*, 815 F.3d 816, 818 (Fed. Cir. 2016).  The '382 Patent falls squarely within this precedent.  The claims of the '382 Patent are directed to the abstract idea of rules for multi-game sports wagering and the claims do not include additional elements sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself.

### A.     *Step 1: The '382 Patent is Directed to the Abstract Idea of Rules for Multi-Game Sports Wagering*

The claims of the '382 Patent are directed to the abstract idea of rules for multi-game sports wagering.  In substance, the '382 Patent claims nothing more than modifying the rules for conventional parlay and teaser-type multi-game sports wagering to permit a bettor to make variable, non-uniform, distribution of shading to point spreads.

In particular, the '382 Patent, entitled "Computer-Implemented System and Method for Making Multiple-Game Sporting Event Wagers[,]" explains that the invention is directed to "providing increased wagering flexibility to an individual bettor in the process of making a multiple armed event wager[.]"  '382 Patent at Claim 1; *see also id.* (Field of the Invention) at 1:6-


DICKINSON WRIGHT
ATTORNEYS AT LAW

12 ("The present disclosure generally relates to computer-aided sports wagering. More particularly, the present disclosure relates to an improved system and method for providing bettor-customizable wagering for multi-layered type wagers, such as teaser and parlay multi-game structured sporting event wagers."). Independent claim 1 (the only independent claim) recites:

> 1. A computer-implemented method for providing increased wagering flexibility to an individual bettor in the process of making a multiple armed event wager from an electronic wager input device having a display, the method comprising steps of:
>
> providing and accessing a wagering system of the type including a central computer system accessible by at least one network terminal in bi-directional electronic communication therewith via an electronic network and having a bettor viewable display, the central computer hosting an executable instruction set for computing intermediate odds between a minimum odds value and a maximum odds value as a function of bettor-controlled modification and redistribution of equal starting shade values associated with respective individual arms of said multiple armed event wager used to determine whether the bettor has won a respective individual arm of said multiple armed wager;
>
> selecting a plurality of teams by said bettor via said display, each selected team associated with an individual one of said events, to thereby establish a multiple team combined wager;
>
> determining baseline odds for said multiple armed wager, said baseline odds based upon application of said equal starting shade values to each of the selected plurality of teams competing in the respective events;
>
> defining a maximum point value by which the line of an individual team can be shaded;
>
> defining a point increment value by which the shaded points can be adjusted;
>
> calculating a minimum odds value of all teams winning, for purposes of the wager, when a maximum positive shade is applied to the initial line of every team included in the wager;
>
> calculating the maximum odds of all teams winning, for purposes of the wager, when a maximum negative shade is applied to the initial line of every team included in the wager;
>
> choosing, by said bettor via said display, a quantity of points to shade the initial lines of each of said respective selected teams and choosing a positive or negative shading direction in which to apply said chosen quantity of points to each said starting line, wherein said step of choosing results in a bettor-defined redistribution of said chosen quantity of points;



combining the chosen quantity of points shaded for each team to obtain a total point shade value;

calculating, as a function of the total point shade value, respective revised odds for the wager, the revised odds for the wager being intermediate of the respective calculated minimum and calculated maximum odds values; and

placing the wager at the calculated revised odds.[5]

In more plain terms, claim 1 teaches the steps of selecting teams to place multi-game bets, determining odds for the wagers and point spreads associated with these games/events, defining point values to be used by bettors to adjust point spreads (shade), calculating minimum and maximum odds values on all the teams winning, choosing the number of points to shade or bias the point spread of selected teams, calculating revised odds and placing wagers associated with revised odds. *See* Ex. 2 at 4-5.[6]

Courts have addressed the nature of sports gambling-based wager games on numerous occasions. Indeed, under the first step of the *Alice/Mayo* test, the concept of managing a wagering game is an abstract idea as old as betting itself, as reflected by Federal Circuit decisions finding

---

[5] The remaining claims, all of which depend from claim 1, do not expand or change the scope or concept of claim 1, and instead merely specify additional parameters for placing wagers (*see* Claims 2-4, 10-12), conventional means for calculating odds that can be performed with pen and paper (*see* Claims 5-8, 14-18), and displaying various information to a bettor using generic components (*see* Claims 9, 13).

[6] To the extent Plaintiff argues that the '382 Patent is immune from judicial scrutiny at the pleading stage because it overcame (incorrectly) a rejection on § 101 grounds during prosecution, that argument is wrong. Courts have granted motions to dismiss in instances where an applicant has overcome a § 101 rejection. *See, e.g.*, *Finnavations LLC v. Payoneer, Inc.*, No. 1:18-CV-00444-RGA, 2018 WL 6168618, at *2, n.3 (D. Del. Nov. 26, 2018) (granting a motion to dismiss at the pleading stage despite Plaintiff's emphasis that the applicant overcame a § 101 rejection) (citing *Glasswall Sols. Ltd. v. Clearswift Ltd.*, 2017 WL 5882415, at *5 (W.D. Wash. Nov. 29, 2017) ("The fact that [a] patent[] [was] not rejected by an examiner is not enough to support [an] argument that the patent[] [is] directed to a patent-eligible concept.") (internal quotations omitted). This is consistent with the longstanding principle that decisions by the United States Patent and Trademark Office ("USPTO") are not binding on the courts. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on a court."); *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1385 (Fed. Cir. 2012) ("Suffice it to say here that the courts have the final say on unpatentability of claims, not the PTO."). Moreover, the rejection and notice of allowance occurred almost three years ago and were based in part on the *examiner's* review of the then-identified case law. *See* Ex. 3 at 7 ("The claims recite an invention dissimilar *to the identified case law provided to the Office*.") (emphasis added).

14

that managing wagers is a fundamental economic process. *See In re Smith,* 815 F.3d at 818 (concluding that claims "directed to rules for conducting a wagering game compare to other 'fundamental economic practice[s]' found abstract by the Supreme Court"); *Planet Bingo, LLC v. VKGS LLC,* 576 F. App'x 1005, 1008 (analogizing claims for "managing a game of Bingo" to the invalid claims in *Alice* and *Bilski*). Indeed, a wagering game is, effectively, a method for exchanging and resolving financial obligations based on probabilities. *See, id.*, at 818-819. And the '382 Patent explicitly confirms this:

> Due to the sheer magnitude of the gambling industry, there is an entire industry dedicated to providing gambling-related information, such as the current odds for various outcomes of a sporting event. Bookmakers use odds to balance the total amount of money bet on each team participating in a particular event, so as to protect the individual or establishment offering, or taking, the bet from losing money. For example, by establishing a point spread, bookmakers will aim to guarantee a profit by achieving a "balanced book," either by getting an equal total amount of bets for each outcome or (when they are offering odds) by getting the amounts wagered on each outcome to reflect the odds.

'382 Patent at 1:19-31.

As the Federal Circuit acknowledges, similar concepts have been found to be directed towards ineligible subject matter. *See In re Smith,* 815 F.3d at 818 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed.Cir.2015) (finding offer-based price optimization abstract), *cert. denied*, 136 S.Ct. 701 (2015); *Planet Bingo, LLC*, 576 F. App'x 1005 at 1007–08 (Fed.Cir.2014) (determining that methods of managing a game of bingo were abstract ideas). Courts in this District have also found that similar concepts were directed towards ineligible subject matter. *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483, 2018 WL 1020120, at *19 (D. Nev. Feb. 22, 2018), *aff'd*, 756 F. App'x 994 (Fed. Cir. 2019) (holding that "claims directed to altering the rules of the game regarding slot games" are directed to a patent-ineligible concept); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 2:16-cv-00857, Op. at 13, 19 (D. Nev. Aug. 29, 2016) (Dkt. #36) (holding that claims directed to "using information from game events to manage wagers" and "facilitating wagering in a game" are abstract ideas that are not patentable).



But even without reference to relevant precedent, the abstract nature of the claims is facially apparent.  Each step of claim 1 recites at a high level of abstraction certain fundamental economic activities capable of being performed by humans, mentally or with a pen and paper—but implemented instead with generic computer hardware and software.  *See, e.g.*, '382 Patent at Claim 1 ("selecting a plurality of teams by said bettor," "determining baseline odds for said multiple armed wager," "defining a maximum point value," "defining a point increment value," "calculating a minimum odds value of all teams winning," "calculating the maximum odds of all teams winning," "choosing, by said bettor via said display, a quantity of points to shade the initial lines," "combining the chosen quantity of points shaded for each team," "calculating, as a function of the total point shade value, respective revised odds for the wager," and "placing the wager."). Not a single one of these steps is different from what odds makers, bettors, houses, and side hustlers have been doing by hand in wagering games for generations.

Under step 1 of *Alice/Mayo* adding a generic "central computer system" and "display," to these known steps in claim 1 does not save it from being directed to an abstract idea.

**B.**     ***Step 2: The Asserted Claims Lack an Inventive Concept***

Not only are the '382 Patent claims directed to the abstract idea of rules for multi-game sports wagering under step 1 of *Alice/Mayo*, the '382 Patent the '382 Patent fails step two as well. Under step two, the Court "looks more precisely at what the claim elements add" to determine if "they identify an inventive concept in the application of the ineligible matter to which ... the claim is directed." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (internal citations omitted).

Whether viewed individually, collectively, or in an ordered combination, the claims of the '382 Patent contain no inventive concept in the application of the ineligible matter.  Nor could Plaintiff reasonably allege so.  The '382 Patent admits that software was utilized to facilitate multiple armed event wagering before the application date of the '382 Patent. *Id.* at 3:3-9.[7] And,

---

[7] This is consistent with the allegations contained within the Second Amended Complaint, which further admits that "*virtually any conventional wagering system*[] generally incorporates a central computer system through which network terminals … communicate electronically, in a

the claimed generic computer components are similarly used as mere tools to process rules for multi-game sports wagering.  Thus, the invocation of these conventional components for their conventional use do not save the claims of the '382 Patent.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2357) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry.") (internal quotations omitted).  Because there is nothing else in the claims regarding the application of this ineligible matter, the '382 Patent fails to satisfy step two.

To the extent Plaintiff contends that the alleged inventive concept is found within a purported innovation to the wagering structure for multi-game sports wagering itself, such as a variation in how shading is performed, that would reflect a misunderstanding of the applicable law.  As the Federal Circuit recently explained, it is improper to conflate allegedly innovative abstract ideas with the requisite "innovation in the non-abstract application realm."  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018), cert. denied, 139 S. Ct. 2747 (2019), reh'g denied, 140 S. Ct. 27 (2019).  In particular, claims are still found to be ineligible where "their innovation is an innovation in ineligible subject matter."  *Id.*

Here, the only purported innovation claimed by the '382 Patent is the ability to "modify the conventional fixed value multiple-armed betting structure through the incorporation of a unique 'sliding' bet methodology through which a bettor may apply a variable, non-uniform, distribution of shading to point spreads and thereby increased input and control over the application of shading vis-à-vis individual teams comprising a multiple team wager[.]"  Ex. 4 at 13 (emphases omitted).  This is recognized in the specification of the '382 Patent, which admits that:

…

…

_____

bidirectional manner, during the process of placing a wager[.]"  *See* Dkt. # 37-3 at 1 (emphasis added).

17

- an "entire industry dedicated to providing gambling-related information, such as the current odds for various outcomes of a sporting event" existed before the application date of the '382 Patent;[8]

- event wagering, including multiple armed event wagering, was known before the application date of the '382 Patent;[9] and

- in multiple armed event wagers, such as in conventional parlay and teaser-type multi-game sports wagering, the concept of shading was known before the application date of the '382 Patent.[10, 11]

Because this purported innovation is a mere "innovation in ineligible subject matter[,]" *i.e.*, an idea that is an alleged advance upon an abstract idea, the Court should reject that argument if raised. *See SAP Am., Inc.*, 898 F.3d at 1163 ("An advance of that nature is ineligible for patenting.").

In sum, the claims of the '382 Patent lacks an inventive concept sufficient to transform the patent-ineligible abstract idea of rules for multi-game sports wagering into a patent-eligible invention and are therefore invalid.

…

…

…

…

…

…

…

---

[8] *Id.* at 1:19-22.

[9] *Id.* at 1:16-19 ("The business of sporting event gambling is a multi-billion dollar industry, especially in places like Nevada, and other geographical areas outside the United States, where gambling is legal."); 1:63-66 ("Different wagering schemes, or types of bets, have been developed over the years to provide bettors with a variety of betting options beyond that of placing a wager on a single game.").

[10] *Id.* at 2:47-48.

[11] As the examiner noted during prosecution, the "[a]pplicant has not claimed to have invented all of the above elements of the wagering scheme of wagers, odds, point spreads, shading. These are all familiar and well-known aspects of parlay betting." Ex. 2 at 3.

**V.     CONCLUSION**

For all of the reasons herein, Defendants respectfully request that all of Plaintiff's claims be dismissed with prejudice.

DATED this 17th day of April 2020.

                                        DICKINSON WRIGHT PLLC


                                        /s/ *Michael N. Feder*
                                        MICHAEL N. FEDER (NV Bar No. 7332)
                                        8363 West Sunset Road, Suite 200
                                        Las Vegas, Nevada 89113

                                        **ARNOLD & PORTER LLP**
                                        EVAN M. ROTHSTEIN
                                        PATRICK B. HALL
                                        370 Seventeenth Street, Suite 4400
                                        Denver, Colorado 80202

                                        **ARNOLD & PORTER LLP**
                                        MICHAEL J. GERSHONI
                                        601 Massachusetts Ave., NW
                                        Washington, District of Columbia 20001

                                        (*Pro Hac Vice* Application to be submitted)

                                        *Attorneys for Defendants Stadium Technology
                                        Group, Inc. and GVC Holdings, PLC*

19



**CERTIFICATE OF SERVICE**

The undersigned, an employee of Dickinson Wright PLLC, hereby certifies that on the 17th day of April 2020, a copy of **GVC HOLDINGS, PLC'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS** was served electronically to all parties of interest through the Court's CM/ECF system as follows:

FISHERBROYLES, LLP
Rob L. Phillips, Esq.
Email:  rob.phillips@fisherbroyles.com
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

*Attorneys for Plaintiff Pure Parlay, LLC*

/s/ *Heather A. Magennis*
An employee of Dickinson Wright PLLC