UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PURE PARLAY, LLC,

          Plaintiff,

vs.

STADIUM TECHNOLOGY GROUP, INC;
GVC HOLDINGS, PLC,

          Defendants.

Case No.: 2:19-cv-00834-GMN-BNW

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 47), filed by Defendants GVC Holdings, PLC and Stadium Technology Group, Inc. ("Defendants"). Plaintiff Pure Parlay, LLC ("Plaintiff") filed a Response, (ECF No. 51), and Defendants filed a Reply, (ECF No. 55).

For the reasons discussed below, the Court **GRANTS** Defendants' Motion.

**I.     BACKGROUND**

This case arises from Plaintiff's allegations that Defendants have infringed Plaintiff's patent, Patent No. 9,773,382, which discloses and claims a "computer-implemented system and method for making multiple-game sporting event wagers." (the "'382 Patent"). (*See generally* Second Am. Compl. ("SAC"), ECF No. 37); (*see also* '382 Patent, Ex. 1 to SAC, ECF No. 37-1). Claim One of the '382 Patent—the lone independent claim—enumerates the steps of the claimed method. (*See* SAC ¶ 10); ('382 Patent at 17–18, Ex. 1 to SAC). The method employs a "bettor viewable display" that accesses a "wagering system" hosted on a "centralized computer network." (*Id.*). The display allows the bettor to select sports teams to include in a "multiple armed event wager."[1] (*Id.*). When the bettor selects the sports teams upon which to wager, the

---

[1] It appears that a "multiple armed event wager" includes at least two component wagers wherein the bettor must prevail in every arm of the wager to accrue any winnings from the multiple armed event wager.

display shows the "baseline odds" for the multiple-armed event wager. (*Id.*). The "baseline odds" of the wager are a function of the odds of each individual arm when each arm is assigned "equal starting shade values." (*Id.*). The patented method then allows the bettor to manipulate the odds of each arm of the wager by "shading"/"moving" the "point spread"/"line"—thereby "handicapping" the sporting events—within a maximum–minimum range calculated in the centralized computer network. (*See id.*). The claimed method also describes the manner for calculating these maximum and minimum possible point shades and the associated odds. (*Id.*). The method requires a third-party bettor to select how to shade each arm of the wager, after which the centralized computer network calculates the total point shade and resulting odds of the multiple-event wager. (*Id.*). For the final step of the claimed method, the wager is placed at the calculated revised odds. (*Id.*).[2]

Plaintiff alleges that Defendants offer an infringing mobile device application (the "Accused Product"), which also enables users to place multiple-arm event wagers on sporting events. (SAC ¶ 11). Plaintiff primarily includes its allegations regarding how the Accused Product infringes the '382 Patent in its Claim Chart, which is incorporated into the Second Amended Complaint by reference. (*See* Claim Chart, Ex. 3 to SAC, ECF No. 37-3). Defendants now move to dismiss the Second Amended Complaint. (*See* Mot. Dismiss ("MTD"), ECF No. 47).[3]

---

[2] For example, consider if for one arm of a multiple-arm wager, a bettor decides to wager on the Las Vegas Raiders to win their game on a given Sunday. If the "unshaded" odds of the Raiders to defeat their opponent are "-120," then the odds indicate that the Raiders are favored to win the game, and the bettor would have to wager $120 to win $100 in this arm of the wager. If the bettor believes the Raiders will win the game, he may use the patented mentod to "shade" the "line"/"point spread" in the negative direction, by "giving points" to the opponent, thereby decreasing the odds that the Raiders will win the game within the fiction of the wager. For instance, if the bettor shades the "point spread" by three points in the negative direction, then the Raiders would have to win their game by more than three points for that arm of the wager to succeed. Inversely, if the bettor shades the line in the positive direction, then the Raider's probability of success would increase and the payout associated with the arm of the wager would decrease.

[3] Defendants also moved for judgment on the pleadings, arguing that the '382 Patent is invalid under § 101 of the Patent Act because it is directed at an abstract idea. (*See* Mot. J. Pleadings, ECF No. 48); (*see also* MTD, ECF

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.3d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion … However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on

---

No. 47) (the documents are duplicates that have been filed separately because Defendants request two forms of relief.).  However, Defendants have stipulated to withdraw the Motion without prejudice. (*See* Stip, Withdraw Mot. J. Pleadings, ECF No. 53); (Order, ECF No. 54).  Pursuant to the parties' Stipulation, the Court does not assess the validity of the '382 Patent in this Order.

a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgement. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgement. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

In their Motion to Dismiss, Defendants argue that the Second Amended Complaint fails to allege facts indicating that the Accused Product practices each element of Claim One of the '382 Patent, instead relying on conclusory assertions. (MTD 6:1–10:2, ECF No. 47). Additionally, Defendants argue that Plaintiff has not adequately alleged facts supporting a theory of divided infringement.[4] (*Id.* 10:3–12:3). Defendants explain that the Complaint must allege divided infringement because the '382 Patent requires at least one step of the claimed

---

[4] Defendants refer to this issue as "joint infringement," but the Federal Circuit uses the term, "divided infringement." (*Compare* MTD at 11:12–15); *with Akamai Techs. Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, (9th Cir. 2015).

method to be performed by a third-party bettor, and the step or steps must be attributable to Defendants to generate liability for their alleged infringement. (*Id.*).

In response, Plaintiff does not address the specific arguments Defendants raise regarding the sufficiency of the Second Amended Complaint. Rather, Plaintiff generally argues that the infringement allegations contained in its Claim Chart are sufficient to survive dismissal. (Pl.'s Resp. ("Resp.") 2:7–4:13, ECF No. 51). Plaintiff further explains that where it relies on inferences instead of specific factual allegations, the inferences are reasonable because Plaintiff does not have access to the back-end functionality of Defendants' software. (*Id.*). Regarding Defendants' divided infringement contentions, Plaintiff argues that: (1) Defendants waived the argument by failing to raise it in their prior Motion to Dismiss; and (2) even if the Court considers the argument, the Accused Product instructs bettors to practice the requisite claim elements, which demonstrates divided infringement. (*Id.* 4:15–6:17). The Court first considers whether the Complaint adequately alleges that the Accused Product practices each disputed claim element of Claim One of the '382 Patent before addressing Defendants' divided infringement contentions.

### A.     The Accused Product

Plaintiff alleges that the Accused Product directly infringes Claim One of the '382 patent. (*See generally* SAC). To state a claim for patent infringement, the complaint must: "(1) allege ownership of the asserted patent; (2) name each individual defendant; (3) cite the patent that is allegedly infringed; (4) describe the means by which the defendants allegedly infringe; and (5) point to the specific section of the patent law invoked." C*LM Analogs, LLC v. James R. Glidewell Dental Ceramics, Inc.*, No. 8:18-cv-0311-JLS-SS, 2018 U.S. Dist. LEXIS 225319 at *6 (C.D. Cal. Jan. 19, 2018). At the motion to dismiss stage, the challenge for the court is typically evaluating whether the complaint plausibly alleges the means by which defendant infringed. *See, e.g.*, *Disc Disease Sols. Inc. v. VGH Sols. Inc.*, 888 F.3d 1256 (Fed. Cir. 2018).

1  "[T]his plausibility standard is met when 'the plaintiff pleads factual content that allows the
2  court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"
3  *Id.* at 1260 (quoting *Iqbal*, 556 U.S. at 678). The necessary factual allegations a plaintiff must
4  plead may qualitatively vary with the complexity of the patent in suit. *See id.*

5  Defendants contend the Complaint does not plausibly allege that the Accused Product:
6  (1) determines the "baseline odds" for a particular wager by "distributing the shade values
7  equally to each competing team;" (2) calculates the minimum odds value when a maximum
8  negative shade is applied and the maximum odds value when a maximum positive shade is
9  applied; or (3) allows betters to choose "a positive or negative shading direction" because
10 screenshots of the Accused Product show that a bettor may only shade the betting line in a
11 positive direction. (MTD 6:1–10:2). The Court's below discussion considers the sufficiency of
12 the Second Amended Complaint's allegations regarding each disputed claim element.

13     i.  *Calculating "Baseline Odds"*

14 The fourth paragraph of Claim One describes a step of the patented method in which the
15 patented method "determin[es] baseline odds for said multiple armed wager, said baseline odds
16 based upon application of said equal starting shade values to each of the selected plurality of
17 teams competing in the respective events[.]" (*See* '382 Patent at 18, Ex. 1 to SAC). In its
18 Claim Chart, Plaintiff alleges, "this can be inferred as the only way to [sic] for Defendants'
19 mobile software application to process the customer shading is to first calculate the baseline
20 odds as the starting point by distributing the shade values equally to each competing team."
21 (Claim Chart, Ex. 3 to SAC, ECF No. 37-3). In the Motion to Dismiss, Defendants contend:
22 (1) the allegation is conclusory and lacks factual support; and (2) the allegation is contradicted
23 by the '382 Patent's disclosures, which suggest that the baseline odds may be unshaded, rather
24 than equally shaded. (MTD 7:7–22) (quoting '382 Patent at 13:58–64, 14:11–13) (explaining
25 that the computer display should show "a non-shaded beginning point spread for each

1  available team (i.e., the baseline odds)," and the Patent's "exemplary odds table" provides
2  that "the baseline odds . . . (i.e., no shade applied to any team) may be displayed[.]").

3        The Court first addresses Defendants' latter contention that the claim limitation is
4  somehow contradicted by the Patent's disclosures. The claim limitation indicates that the
5  patented method calculates the baseline odds for a multiple-arm event wager as a function of
6  each arm's respective odds when each arm is assigned an equal starting point shade. The
7  disclosures indicate that, specifically, the baseline odds may be calculated when the component
8  wagers' point spreads are not shaded in the positive or negative direction. These positions are
9  not contradictory. If all teams selected in a multiple-arm wager are assigned non-shaded point
10  spreads, then each arm of the wager has an "equal starting shade" of zero. Accordingly, the
11  disclosures do not undermine the disputed claim element in any way.

12        However, the Court is unpersuaded by Plaintiff's conclusory assertion that assigning
13  each team in a wager an equal starting shade is the only way a sports betting application could
14  calculate the baseline odds displayed to a bettor. As a basic example, if the arms of a wager
15  were assigned different maximum shade values, and the baseline odds were a function of the
16  maximum shade values, then the odds associated with the maximum shade values would not
17  infringe the claim element because the odds would not be based on an "equal starting shade."[5]
18  Alternatively, a non-infringing application could employ a complicated algorithm that
19  determines an optimal wager for each arm that is a function of the probability of success of an
20  arm relative to the payout associated with success. The many possible alternatives are
21  problematic for Plaintiff's allegations of infringement. Plaintiff has not provided any fact-
22  based explanation regarding why assigning an equal starting shade to the teams in a wager is
23  "the only way" for the Accused Product to determine baseline odds. Therefore, Plaintiff has

---

25  [5] For example, if the application only allows a bettor to shade the Raiders' point spread to a maximum of Raiders +2, but the bettor may shade the Tennessee Titans' point spread to Titans +3, and the baseline odds are based on these maximum shade values, then the baseline odds are not based on an "equal starting shade" for the teams.

not plausibly alleged that the Accused Product practices the disputed claim element, which defeats the Second Amended Complaint's infringement claim.

                ii.       *Calculating Shaded Odds*

The seventh and eighth paragraphs of Claim One describe steps of the claimed method in which the patented method "calculat[es] a minimum odds value of all teams winning, for purposes of the wager, when a maximum positive shade is applied to the initial line of every team included in the wager; [and] calculat[es] the maximum odds of all teams winning, for purposes of the wager, when a maximum negative shade is applied to the initial line of every team included in the wager." (*See* '382 Patent at 18, Ex. 1 to SAC). Plaintiff's Claim Chart indicates that the Accused Product infringes these claim elements because "this can be inferred as the only way to process the customer shading to initially calculate" the respective minimum and maximum odds values of the wager. (*See* Claim Chart, Ex. 3 to SAC). Defendants argue that Plaintiff has again failed to allege facts supporting infringement and merely parrots the language of the claim limitations while asserting that infringement of the limitations may be inferred. (MTD 7:23–8:7).

Although conclusory, the Court finds Plaintiff's inference reasonable. Defendants do not dispute Plaintiff's inference that the Accused Product provides a range of selectable point shades for each arm of a multiple-arm wager, and that the Accused Product calculates the odds associated with the available point shades. It appears obvious that the Accused Product must calculate the odds associated with the plurality of wager options it displays to the bettor, or else a wager could not be placed. Therefore, while Defendants' alleged practice of the disputed claim elements requires the Court to make an inference of fact, the Court finds the inference reasonably based upon the Accused Product's alleged functionality and sufficient to survive dismissal.

//

       iii.      *Availability of Negative Shading*

The ninth paragraph of Claim One describes a step in which the patented method requires a bettor to choose "a quantity of points to shade the initial lines of each of said respective teams and choosing a positive or negative shading direction in which to apply said chosen quantity of points. . . ." (*See* '382 Patent at 18, Ex. 1 to SAC). Plaintiff alleges that the Accused Product infringes the '382 Patent by allowing the bettor to choose, via a touchscreen on a smartphone, a quantity of points to positively or negatively shade the initial lines of each arm of the wager. (Claim Chart, Ex. 3 to SAC). To substantiate the allegation, Plaintiff provides a screenshot of the Accused Product allowing a bettor to "buy" points on an arm of a wager. (*See* Screenshot 3 to Claim Chart, Ex. 3 to SAC).[6] Defendants argue that Plaintiff does not state a plausible claim to infringement because, as Plaintiff's own screenshot shows, the Accused Product only allows a bettor to shade points in the positive direction; whereas, the claim also describes the option to shade points in the negative direction. (MTD 8:8–10:2) (citing Screenshot 3 to Claim Chart, Ex. 3 to SAC) (allowing Plaintiff to "buy" points, but not "sell" points).

While it appears that Plaintiff's Complaint does not plausibly allege that the Accused Product enables bettors to apply a negative-point shade to an arm of a wager, the Court cannot say that the distinction precludes infringement. Given that Claim One of the '382 Patent encompasses software that allows "positive or negative" point shading, it is unclear whether an accused product that allows only unidirectional point shading is infringing. The dispositive issue seems to be how the Court construes the claim element's use of the disjunctive "choosing a positive or negative shading direction." It is unclear whether a device that allows a bettor to choose one direction may be infringing, or if both options must be available. The issue is more

---

[6] The Court may consider the screenshots at the motion-to-dismiss stage as they are properly incorporated by reference in the Complaint. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

appropriately left for claim construction. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018).  Therefore, the Court cannot say at this time whether Plaintiff's allegation supports its infringement claim.  The Court next considers whether the Complaint adequately alleges Defendants' infringement liability under a theory of divided infringement.

**B.  Divided Infringement**

Defendants contend that the Complaint fails to allege that Defendants practice each element of the claimed method, which precludes their liability for direct infringement. (MTD 10:3–12:3).  Specifically, Defendants argue that Plaintiffs do not allege Defendants practice the claim element requiring a third-party bettor to choose "a quantity of points to shade the initial lines," because Plaintiff does not allege facts that attributing the hypothetical bettor's conduct to Defendants. (MTD 10:3–12:3).  Plaintiff responds that Defendants are liable for the bettors' conduct under a theory of divided infringement because the mobile application effectively instructs the method and manner for bettors' practice of the disputed claim element. (Resp. 5:8–6:17).[7]

Generally, to allege direct infringement of a method patent, a plaintiff must allege that the defendant practices each step of the claimed method. *See* 35 U.S.C. § 271(a); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379–81 (Fed. Cir. 2007) (overruled in part on other grounds).  If the patent requires a third party to practice a step of the claimed method, then the defendant is liable only if the third party's conduct is attributable to the defendant. *Id.*  A third party's conduct may be attributed to the defendant if: (1) the third party acts as an agent of the defendant; (2) the defendant "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of

---

[7] Plaintiff also responds that the Court should discard the argument as it was waived under Federal Rule of Civil Procedure 12(g) when Defendants failed to raise it in their earlier Motion to Dismiss.  The Court finds the interest of judicial economy best served by considering Defendants' argument, and it therefore exercises its discretion to do so. *See in re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).

that performance;" or (3) the defendant and third-party act as a "joint enterprise." *Akamai Techs. Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015); *see also Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, (Fed. Cir. 2017). Enabling a third-party to practice a step or steps of the patented method, without more, is insufficient to establish a defendant's infringement. *Id.*

Here, only the second theory of divided infringement—conditioning participation or receipt of a benefit while directing the manner of performance—is at issue. The Second Amended Complaint explains that the Accused Product "enable[s]" bettors to choose a quantity of points to shade the initial lines for each arm of a multiple-arm wager because the allegedly infringing device provides a limited range of betting lines from which a bettor may choose. (Resp. 5:16–21); (*see also* SAC ¶ 14); (Claim Chart, Ex. 3 to SAC). Plaintiff further contends that the Accused Product's display of point-shading options renders bettors' selection attributable to Defendants because the facts are analogous to a similar case recently decided by the United States District Court for the Central District of California. (*Id.* 6:11–17) (citing *Techno View IP Inc. v. Sony Interactive Entertainment LLC*, No. 17-cv-1268, 2018 WL 3031518 (C.D. Cal. Apr. 18, 2018)).

Plaintiff's conclusory assertions and citation to a district court case without explanation of how it applies to these facts are unpersuasive. The Second Amended Complaint explains how the bettor may use the Accused Product in an infringing manner, but it does not allege that Defendants instruct bettors on how to use the Accused Product. Nor does it allege the benefit bettors derive from following said instructions. While sufficient allegations are not difficult to imagine, the Court must rely on the facts alleged rather than those that could have been. Accordingly, the Court dismisses without prejudice Plaintiff's infringement claim.

//

//

### C. Leave to Amend

Federal Rule of Civil Procedure Rule 15(a)(2) allows courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Here, the Court finds that Plaintiff could allege facts to support a claim of infringement, and it is in the interest of justice to allow leave to amend.  While Plaintiff has been already been afforded an opportunity to amend by the Court, the Court does not find that Plaintiff has engaged in any undue delay or bad faith conduct that would justify denying leave to amend.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 47), is **GRANTED**.  Plaintiff's Complaint is **DISMISSED without prejudice**.  Plaintiff shall have twenty-one (21) days from entry of this Order to file an amended complaint.  Failure to timely file an amended complaint will result in dismissal of the case with prejudice.

Dated this  11  day of January, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT