**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER (Nevada Bar No. 7332)
Email: mfeder@dickinsonwright.com
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel:  (702) 550-4440
Fax:  (844) 670-6009

**ARNOLD & PORTER KAYE SCHOLER LLP**
EVAN M. ROTHSTEIN (Admitted Pro Hac Vice)
Email: evan.rothstein@arnoldporter.com
PATRICK B. HALL (Admitted Pro Hac Vice)
Email: patrick.hall@arnoldporter.com
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202
Tel: (303) 863-1000
Fax: (303) 832-0428

**ARNOLD & PORTER KAYE SCHOLER LLP**
MICHAEL J. GERSHONI (Pro Hac Vice Application to be submitted)
Email: michael.gershoni@arnoldporter.com
601 Massachusetts Ave., NW
Washington, District of Columbia 20001
Tel: (202) 642-5000
Fax: (202) 942-5999
(*Pro Hac Vice* Application to be submitted)

*Attorneys for Defendants Stadium Technology Group, Inc.
and GVC Holdings, PLC*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| PURE PARLAY, LLC a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>STADIUM TECHNOLOGY GROUP, INC., a Nevada Corporation, and GVC HOLDINGS, PLC, a company incorporated in the Isle of Man,<br><br>Defendants. | Case No. 2:19-cv-00834-GMN-BNW<br><br>**GVC HOLDINGS, PLC'S AND STADIUM TECHNOLOGY GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |



1

Defendants Stadium Technology Group, Inc. ("STG") and GVC Holdings, PLC ("GVC") (collectively "Defendants"), by and through their undersigned attorneys, respectfully move this Court for entry of an order dismissing Plaintiff Pure Parlay, LLC's ("Plaintiff") Third Amended Complaint ("Third Amended Complaint") for failure to state a claim pursuant to Fed. R. Civ. P. Rule 12(b)(6) with prejudice.  This Motion is made and based on the pleadings and papers on file in this matter and the memorandum of points and authorities below, and any oral argument the Court may entertain.

## I.   INTRODUCTION

Plaintiff's thrice resurrected complaint fails to breathe new life into its still-implausible claims.  On February 5, 2020 and January 11, 2021, respectively, the Court dismissed Plaintiff's First and Second Amended Complaints for Patent Infringement of U.S. Patent No. 9,773,382 (the "'382 Patent") for failure to state a claim based on pleading deficiencies.  *See* Dkt. #'s 34, 64. Now, on its fourth attempt, Plaintiff's reassembled allegations fare no better.

If a plausible claim of patent infringement existed, it is reasonable to assume that the Second Amended Complaint would have contained sufficient factual allegations to assert one.[1] But it did not.  And now despite clear guidance and direction contained in the Court's most recent Order of Dismissal as to the specific deficiencies in Plaintiff's allegations, the Third Amended Complaint *still* does not plead a plausible claim of infringement.  Thus, despite nearly *two years* to investigate and develop its claims and instructions from *two* different Court Orders, Plaintiff has once again failed to meet the most basic of pleading standards for any assertion of infringement—direct, indirect, or willful.

The Court's prior Orders make it simple to identify the deficiencies in Plaintiff's latest attempt.  Most importantly, it is indisputable that the Accused Product may be used to place bets that do not produce "a bettor-defined *redistribution*" of points as expressly required by the claims. This is precisely why Plaintiff alleges that the Accused Product "enable[s]" or "allow[s]" the

---

[1] As this Court has previously explained, "[w]hile sufficient allegations are not difficult to imagine, the Court must rely on the facts alleged rather than those that could have been."  Dkt. # 64 at 11.



1   bettors to perform certain functions—as opposed to requiring them to do so. *See, e.g.*, Dkt. # 65,

2   ¶ 11. In view of this inescapable fact regarding non-infringing uses, Plaintiff must do more than

3   make generalized allegations regarding the Accused Product. Its allegations must focus on the

4   allegedly infringing use of the Accused Product and explain why its case can overcome the divided

5   infringement problems.

6          But Plaintiff cannot. Its inability to direct its direction or control allegations towards

7   conduct that (allegedly) infringes both dooms its Third Amended Complaint and demonstrates that

8   its divided infringement problem is insurmountable. The belated addition of indirect infringement

9   allegations and claims do not result in a different outcome. Plaintiff should not be afforded yet

10   another do-over and instead the Court should dismiss the Third Amended Complaint in its entirety

11   and with prejudice.

12   **II.   LEGAL STANDARDS**

13          **A.   *Twombly and Iqbal Plausibility Guidelines***

14          "To meet the plausibility standard, a plaintiff must plead 'factual content that allows the

15   court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'

16   Merely pleading facts that are consistent with liability or stating legal conclusions is not

17   sufficient." *Artrip v. Ball Corp.*, 735 F. App'x. 708, 714 (Fed. Cir. 2018) (non-precedential)

18   (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Nalco Co. v. Chem-Mod LLC,* 883

19   F.3d 1337, 1347-48 (Fed. Cir. 2018) (applying the standards set forth in *Iqbal* and *Bell Atl. Corp.*

20   *v. Twombly*, 550 U.S. 544 (2007) to claims of direct infringement).

21          In considering whether the complaint is sufficient to state a claim, the court will take all

22   material allegations as true and construe them in the light most favorable to the plaintiff. *See NL*

23   *Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to

24   accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

25   unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

26   A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff

27   must plead facts pertaining to his own case making a violation "plausible," not just "possible."

28

1  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has

2  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3  reasonable inference that the defendant is liable for the misconduct alleged.").

4      **B.**    *Proving Direct Infringement Under 35 U.S.C. § 271(a)*

5      "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention,

6  within the United States or imports into the United States any patented invention during the term

7  of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  For method claims, "[d]irect

8  infringement under § 271(a) occurs where all steps of a claimed method are performed by or

9  attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020,

10  1022 (Fed. Cir. 2015) (en banc).  The latter circumstance, when all steps of a claimed method are

11  merely attributable to a single entity, is often referred to as divided infringement.  *See id*.

12      To determine whether an entity directs or controls others' performance, courts look to

13  general principles of vicarious liability.  *Id*.  An actor is liable for infringement if they act through

14  an agent or contract with another to perform one or more steps of a claimed method.  *Id,* 1023.

15  Similarly, an actor may be liable when they "condition[] participation in an activity or receipt of a

16  benefit upon performance of a step or steps of a patented method and establish[] the manner or

17  timing of that performance." *Id.*

18      **C.**    *Proving Indirect Infringement Under 35 U.S.C. § 271(b) and (c)*

19      A claim for active inducement of patent infringement requires that the patentee establish

20  "first that there has been direct infringement, and second that the alleged infringer knowingly

21  induced infringement and possessed specific intent to encourage another's infringement."

22  *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697-98 (Fed. Cir. 2008) (citation omitted).  The

23  Supreme Court has held that "[i]nduced infringement under § 271(b) requires knowledge that the

24  induced acts constitute patent infringement." *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S.

25  754, 765 (2011).  As a result, inducement requires proof of knowledge of the relevant patent.  *Id*,

26  766.  The patent holder must also allege that, once the defendant knew of the patent, the defendant

27  "actively and knowingly aided and abetted another's direct infringement."  *DSU Med. Corp. v.*

28

DICKINSON WRIGHT
ATTORNEYS AT LAW

*JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (citation omitted).

Like a claim for induced infringement, "§ 271(c) requires knowledge of the existence of the patent that is infringed." *Global–Tech*, 563 U.S. at 765. In addition, the patentee must plead facts that allow an inference that the components sold or offered for sale have no substantial noninfringing uses. *In Re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). "[A] substantial non-infringing use is any use that is not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Id.* (citing *Vita–Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327–29 (Fed. Cir. 2009)) (quotation marks omitted).

## III.   PLAINTIFF FAILS TO CURE ITS ALLEGATIONS THAT THIRD-PARTY PERFORMANCE IS ATTRIBUTABLE TO DEFENDANTS

The '382 Patent contains a single independent claim, which requires performance by a third-party bettor, *i.e.*, a user or person *other* than Defendants:

> 1. A computer-implemented method for providing increased wagering flexibility to an individual bettor in the process of making a multiple armed event wager from an electronic wager input device having a display, the method comprising steps of:
>
> …
>
> *choosing, by said bettor* via said display, *a quantity of points to shade the initial lines of each of said respective selected teams and choosing a positive or negative shading direction in which to apply said chosen quantity of points* to each said starting line, *wherein said step of choosing results in a bettor-defined redistribution of said chosen quantity of points*; [….]

Dkt. # 65-1, '382 Patent at Claim 1 (emphasis added). In its previous (*i.e.*, third) attempt to plausibly claim direct infringement, Plaintiff's allegations failed to meet the *Twombly/Iqbal* pleading standards because they merely "explain[ed] how the bettor *may* use the Accused Product in an infringing manner[.]" *See* Dkt. # 64 at 11 (emphasis added).

Under the standard articulated in *Akamai* and its progeny, not only does Plaintiff's latest attempt fail to cure this deficiency—it misses the point. There are no allegations that any bettor is acting as an agent of the Defendants. *See* Dkt. # 64 at 10 (citing *Akamai* and *Eli Lilly & Co.*). There are no allegations that the Defendants and any bettor act as a "joint enterprise." *Id.* And there are no allegations that the Defendants "condition participation in an activity or receipt of a



benefit upon *performance of a step or steps of a patented method*" or "establish[] the manner or timing of *that performance*." *Id.* (emphasis added).   Instead, Plaintiff makes generalized allegations concerning the Accused Product with indifference towards whether any direction or control is directed towards a purportedly infringing use:

- "[T]he Defendants instruct the bettor on how to use the User/Bettor Interface and related software and the bettor derives a direct benefit from doing so." (Dkt. # 65, ¶ 18)[2];

- "The User/Bettor Interface and related software are provided under the direction and control of Defendants." (*id.*, ¶ 19);

- "Defendants control the procedures and timing for operation of the User/Bettor Interface including receipt of the benefits of the User/Bettor Interface. Access to the Defendants' User/Bettor Interface is limited to sports books in jurisdictions legally allowing sports betting who then offer it to end-user bettors who download the required software and sports betting application on to a smartphone or other wireless device or via a kiosk." (*id.*);

- "The bettors then use the software to place bets including multiple-armed bets of the type that infringe the '382 Patent." (*id.*).

The problem with this approach is immediately apparent.   There can be no liability for non-infringing uses of the Accused Product.   And on the face of Exhibit 3 to the Third Amended Complaint, those non-infringing uses are obvious.   To plausibly allege divided infringement, Plaintiff was required by the claims of the '382 Patent to allege that the "operation of the User/Bettor Interface" or any benefit deriving therefrom was conditioned upon performance of "choosing … a quantity of points to shade the initial lines of each of said respective selected teams"

---

[2] Instruction is not relevant to the question of whether Defendants "condition[] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance[.]"   *See Lone Star Technological Innovations, LLC v. ASUSTeK Comp., Inc.*, Case No. 6:19-cv-00059 at 12 (E.D. Tex. Jan. 14, 2020) ("If Lone Star's allegations that ASUSTeK instructs its customers to use the ASUSTeK Monitor in an infringing way, combined with some benefit achieved through infringement, were enough, every claim of induced infringement would also state a claim for divided infringement.").



and "choosing a positive or negative shading direction in which to apply said chosen quantity of points" as required by the claims—not mere use of an application that may or may not infringe.

Plaintiff cannot avoid its own allegations highlighting the *option*, but not requirement, to use the Accused Product in an allegedly infringing manner. Instead, Plaintiff's allegations have repeatedly explained that "Defendants' software (i.e., User/Bettor Interface) [] … *enabl[es]* bettors … to 'buy' points on individual teams of a multiple team wager (e.g., a parlay, teaser, etc.), and *allow[s]* bettors to 'move' (i.e., shade in either a positive or negative direction) the line[.]" *See id.*, ¶ 11 (emphasis added). Neither "enable" nor "allow" are terms expressing a lack of choice. Likewise, Plaintiff alleges that "[t]he bettors [] use the software to place bets *including* multiple-armed bets of the type that infringe the '382 Patent[.]" *Id.*, ¶ 19 (emphasis added). If the only bets bettors could place are multiple-armed bets of the type that infringe the '382 Patent, Plaintiff should have said so.

*Nalco Co. v. Chem-Mod, LLC*, highlighted in Defendants' past Motion to Dismiss, continues to be instructive. There, the Federal Circuit found that for joint direct infringement to be plausibly pled, the allegations must be specifically directed to infringing performance. 883 F.3d 1337, 1351-52 (Fed. Cir. 2018) ("Our case law emphasizes the importance of correctly identifying the relevant 'activity' or 'benefit' *that is being conditioned upon the performance of one or more claim steps*.") (internal quotations and citations omitted) (emphasis added). The plaintiff in *Nalco* was permitted to proceed because it had alleged, with factual support, that each infringing step performed by a third-party was "taken pursuant to the express direction and control of the Defendants." *Id.* at 1352 (citing plaintiff's operative complaint).

Despite being aware of this guidance, Plaintiff's allegations still do not come anywhere close to the allegations in *Nalco Co.*, nor could they. Unlike the plaintiff in *Nalco Co.*, Plaintiff here made no allegations that Defendants expressly direct bettors to choose "a quantity of points to shade the initial lines of each of said respective selected teams." *See* Dkt. # 65-1, '382 Patent at Claim 1. Plaintiff further makes no allegations that Defendants exercise any control over bettors' decisions, including the decision to shade generally, or that the benefit of using

1   Defendants' software is conditioned on bettors shading any wagers.  This is because, by Plaintiff's

2   own admission in Exhibit 3, users of Defendants' system have options in how they place bets

3   including those that Plaintiff cannot possibly accuse of infringement.

4          Equally concerning, however, is that if the facts existed to plausibly plead that Defendants

5   directed or controlled bettors to perform one or more claim steps (they do not), it should have been

6   incumbent on Plaintiff to include them in its latest among many complaints.  Plaintiff has had

7   nearly two years to conduct pre-suit investigations, *i.e.*, test Defendants' software sufficiently to

8   plead a proper complaint for direct infringement, identify terms or agreements mandating certain

9   performance.  This is not a case where the allegations are based on any lack of visibility into

10  Defendants' Accused Product.  But, despite ample opportunity, Plaintiff continues to rely upon

11  generic allegations such as "the Defendants instruct the bettor on how to use the User/Bettor

12  Interface" but do so *without* quoting a single instruction.[3]  Plaintiff also chose to allege that "[t]he

13  User/Bettor Interface and related software are provided under the direction and control of

14  Defendants[,]" but do not (even tangentially or speculatively) point to terms or agreements

15  between Defendants and any bettor conditioning use of the Accused Product on the bettor using

16  the Accused Product in an infringing manner (because none exist).

17  **IV.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE INDUCED INFRINGEMENT**

18         Because Plaintiff's allegations of induced infringement require that there be plausible

19  allegations of direct infringement (there are not as discussed in Sec. III, *supra*), the allegations as

20  to these claims are necessarily insufficient as well.  *See Broadcom Corp.*, 543 F.3d at 697-98.

21  Even assuming, however, that Plaintiff's allegations of direct infringement were sufficient, the

22  allegations for induced infringement do not meet the pleading requirements set forth in *Twombly*

23  and *Iqbal.*

24         In addition to alleging direct infringement, claims for induced infringement require that the

25

26  _____

    [3] Exhibit 3 does not show that Defendant "instruct[s] the bettor on how to use the User/Bettor

27  Interface."  A list of optional buttons for a user to select is not an instruction on how to use the
    software or even to select any one of the options.  If, as Plaintiff suggests, "[t]he software
    application, like most software applications provides instructions on how to use the same[,]" it

28  should have provided them.  *See* Dkt. # 65, ¶ 20.

patent holder allege that, once the defendant knew of the patent, the defendant "actively and knowingly aided and abetted another's direct infringement." *DSU Med. Corp.*, 471 F.3d at 1305 (citation omitted).  Accordingly, "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proved." *Id.* (quotations and citation omitted).

The Third Amended Complaint fails because its allegations are directed to mere knowledge of possible or potential infringement—not specific *intent to cause* infringement.  Instead of alleging that Defendants instruct bettors how to engage in performing one or more claim steps, the Third Amended Complaint merely alleges that Defendants instruct bettors on how to use the Accused Product generally.  *Compare* Dkt. # 65, ¶ 20 *with DSU Med. Corp.*, 471 F.3d at 1306 (explaining an affirmative act to show induced infringement includes instructing an infringer on how to engage *in an infringing use*); *see also Takeda Pharms. v. West-Ward Pharm.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (quotation and citation omitted) (explaining that specific intent means an "intent to encourage infringement.  The question is not just whether [product] instructions describe the infringing mode, but whether the instructions teach an infringing use of the device such that [a court may] infer from those instructions an affirmative intent to infringe the patent.").[4] Likewise, instead of alleging that Defendants promoted the purportedly infringing use of the Accused Product, the Third Amended Complaint merely alleges that Defendants promote the Accused Product generally.  *Compare* Dkt. # 65, ¶ 20 *with DSU Med. Corp.*, 471 F.3d at 1306 (explaining an affirmative act to show induced infringement includes offering a product with the object of *promoting its use to infringe*).  Plaintiff's failure to provide any allegations of specific intent to cause infringement necessarily means that it failed to adequately allege induced infringement of any claim of the '382 Patent.

## V.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE CONTRIBUTORY INFRINGEMENT

To sufficiently allege contributory infringement, the Third Amended Complaint must "plead facts that allow an inference that the components sold or offered for sale have no substantial

---

[4] *See* fn. 3, *supra*.

1   non-infringing uses." *In re Bill of Lading*, 681 F.3d at 1337.  As the Federal Circuit explained in

2   *Vita-Mix Corp. v. Basic Holding, Inc.*, "non-infringing uses are substantial when they are not

3   unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  581 F.3d 1317,

4   1327 (Fed. Cir. 2009).

5        Plaintiff's sole conclusory allegation that "there are not substantial non-infringing uses" of

6   the Accused Product alone warrants dismissal of this claim.  But more concerning is that this

7   allegation stands in stark contrast to Plaintiff's own characterization of the Accused Product.  For

8   example, as discussed in Section III, *supra*, Plaintiff alleges that "[t]he bettors [] use the software

9   to place bets *including* multiple-armed bets of the type that infringe the '382 Patent"—not that the

10  only use of the Accused Product is to place multiple-armed bets of the type that infringe the '382

11  Patent.  *Id.*, ¶ 19 (emphasis added).

12       That flaw in Plaintiff's allegations is incurable.  As shown by Plaintiff's own exhibits, the



23  Accused Product permits the bettor to choose not to "shade the initial lines."  *Compare* Dkt. # 65-

24  1, '382 Patent, Claim 1 *with* Ex. 3:

25       If the bettor can choose not to purchase points and instead place a bet with the baseline

26  odds, then it necessarily follows that no "bettor-defined *redistribution* of said chosen quantity of

27  points" occurs, as required by the claims of the '382 Patent.  In other words, Plaintiff's pleading

28  (and exhibits) is permanently self-defeating as to this claim.

## VI.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE PRE-COMPLAINT INDIRECT INFRINGEMENT

Plaintiff broadly requests that it should be "awarded all damages adequate to compensate it for Defendants infringement of the '382 Patent[.]"  To the extent the Court finds that Plaintiff has plausibly alleged either induced or contributory infringement, Plaintiff should not be entitled to move forward seeking damages on these claims prior to initiating the case.

Both induced and contributory infringement require a showing of knowledge.  *See Global–Tech Appliances, Inc.*, 563 U.S. at 765.  Here, Plaintiff provides no factual allegations of Defendants' alleged pre-suit knowledge and thus Plaintiff is not entitled to pre-suit damages for indirect infringement.  If Plaintiff had a factual basis to allege pre-suit knowledge, it should have done more than merely state "[u]pon information and belief, Defendants have knowledge and notice of the '382 patent, as well as their infringement thereof."  *See* Dkt. # 65, ¶ 25.  This is insufficient.

## VII.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE WILLFUL INFRINGEMENT WARRANTING ENHANCED DAMAGES

Plaintiff failed to state a claim for willful infringement because they have failed to allege any facts suggesting the Defendants' conduct is "egregious … beyond typical infringement."  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) (holding that enhanced damages are generally appropriate only in egregious cases).  The Third Amended Complaint requests that "the damages to Plaintiff be trebled" and that the "case be declared exception within the meaning of § 285 [to be] awarded [] attorneys' fees, costs, and expenses incurred in connection with this case[.]" Dkt. # 65 at 7.  Its basis: "*Upon information and belief*, Defendants have had knowledge and notice of the '382 Patent, as well as their infringement thereof[,]" "Defendants' infringement [] has been continuous and willful[,]" and "Defendants' infringement [] renders this case exceptional[.]"  *Id.*, ¶¶ 25-27 (emphasis added).

Under the *Halo* standard, a Plaintiff cannot sufficiently plead a claim for willful infringement with simply conclusory allegations of knowledge.  And in fact, the only inference of knowledge that is reasonable based on Plaintiff's allegations are that Defendants first became



aware of the '382 Patent when Plaintiff initiated the first of its now four attempts to plead plausible allegations of infringement.  Where, as here, Plaintiff has done nothing to distinguish this case from any other patent case, it has thus failed to state a claim for willful infringement.  *See CG Technology Development, LLC, et al. v. Zynga, Inc.*, Case No. 2:16-cv-00859-RCJ-VCF, at 9 (D. Nev. Feb. 17, 2017) (dismissing claim of willful infringement where plaintiff merely alleged that the defendant was aware of the patent-in-suit and had continued to offer, use, and promote its casino products).

## VIII.   CONCLUSION

For all of the reasons herein, Defendants respectfully request that all of Plaintiff's claims be dismissed with prejudice.

DATED this 16th day of February, 2021.

**DICKINSON WRIGHT PLLC**

*/s/: Michael N. Feder*
MICHAEL N. FEDER (NV Bar No. 7332)
3883 Howard Hughes Pkwy.,, Suite 800
Las Vegas, Nevada 89169

**ARNOLD & PORTER KAYE SCHOLER LLP**
EVAN M. ROTHSTEIN
PATRICK B. HALL
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202

**ARNOLD & PORTER KAYE SCHOLER LLP**
MICHAEL J. GERSHONI
601 Massachusetts Ave., NW
Washington, District of Columbia 20001

*Attorneys for Defendants Stadium Technology Group, Inc. and GVC Holdings, PLC*



1

**CERTIFICATE OF SERVICE**

2

The undersigned, an employee of DICKINSON WRIGHT PLLC, hereby certifies that on the

3

16th day of February, 2021, a copy of **GVC HOLDINGS, PLC'S MOTION TO DISMISS FOR**

4

**FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** was served

5

electronically to all parties of interest through the Court's CM/ECF system as follows:

6

7

FISHERBROYLES, LLP
Rob L. Phillips, Esq.

8

Email:  rob.phillips@fisherbroyles.com
5670 Wilshire Blvd., Suite 1800

9

Los Angeles, CA 90036
Telephone: (702) 518-1239

10

11

*Attorneys for Plaintiff Pure Parlay, LLC*

12

  */s/: Elsa P. Amoroso*

13

An employee of DICKINSON WRIGHT PLLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

