**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER (Nevada Bar No. 7332)
Email: mfeder@dickinsonwright.com
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel:  (702) 550-4440
Fax:  (844) 670-6009

**ARNOLD & PORTER LLP**
EVAN M. ROTHSTEIN (*Admitted Pro Hac Vice*)
Email: evan.rothstein@arnoldporter.com
PATRICK B. HALL (*Admitted Pro Hac Vice*)
Email: patrick.hall@arnoldporter.com
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202
Tel: (303) 863-1000
Fax: (303) 832-0428

**ARNOLD & PORTER LLP**
MICHAEL J. GERSHONI (*Admitted Pro Hac Vice*)
Email: michael.gershoni@arnoldporter.com
601 Massachusetts Ave., NW
Washington, District of Columbia 20001
Tel: (202) 642-5000
Fax: (202) 942-5999

*Attorneys for Defendants Stadium Technology Group, Inc.
and GVC Holdings, PLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PURE PARLAY, LLC a Nevada Limited Liability Company, | Case No. 2:19-cv-00834-GMN-BNW |
| Plaintiff, | |
| v. | **DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS** |
| STADIUM TECHNOLOGY GROUP, INC., a Nevada Corporation, and GVC HOLDINGS, PLC, a company incorporated in the Isle of Man, | |
| Defendants. | |



1

Defendants Stadium Technology Group, Inc. and GVC Holdings plc (now known as Entain plc) (collectively "Defendants"), by and through their undersigned attorneys, respectfully move this Court for judgment on the pleadings under Fed. R. Civ. P. 12(c) with prejudice. This Motion is based on the pleadings and papers on file in this matter, the memorandum of points and authorities below, the Declaration of Michael J. Gershoni[1] and the attached exhibits.

## I.    INTRODUCTION

This case presents the classic situation of a purported inventor receiving a patent on a well-known, abstract idea by simply instructing that it should be implemented on a generic computer and nothing more. But such patents, common in the gaming space, have been routinely invalidated by courts in this District and around the country under the now familiar *Alice*/*Mayo* framework. And for good reason. True innovation requires more than just rehashing abstract ideas and adding a general-purpose computer processor. Yet, because this type of ineligible subject matter is precisely what U.S. Patent No. 9,773,382 (the "'382 Patent") claims, the '382 Patent is invalid and cannot be enforced against Defendants.

35 U.S.C. § 101 mandates that properly granted patents must claim technological inventions, not abstract ideas or mere implementation of abstract ideas with generic computer technology. To withstand scrutiny under this "Section 101" rubric, the United States Supreme Court has formulated a two-step framework for determining patent eligibility. To survive a challenge under this framework, the '382 Patent has to meet both prongs of the test. Here, the claims of the '382 Patent fail both.

*First*, the claims are directed to the abstract idea of managing a multi-team sports wager—a long-standing human economic practice in existence for many decades. The '382 Patent specification recognizes that parlay and teaser-type multi-game sports wagering were known before the application date of the '382 Patent. Plaintiff's particular spin on this wagering scheme is immaterial because it does not change the abstract nature of the claims.

…

---

[1] Ex. 1.



*Second*, Plaintiff's wagering scheme lacks an "inventive concept" in the application of this ineligible subject matter because it merely implements the claimed abstract idea on a general-purpose computer. It is precisely these sorts of claims that the Supreme Court, the Court of Appeals for the Federal Circuit, and this Court have repeatedly warned constitute ineligible subject matter.

Because the '382 Patent fails the Section 101 test for patent eligibility, this Court should find its asserted claims invalid and dismiss this case.

## II.    FACTUAL BACKGROUND

The '382 Patent, entitled "Computer-Implemented System and Method for Making Multiple-Game Sporting Event Wagers," explains that the invention is directed to a system and method for computer-aided sports wagering. *See* '382 Patent, 1:7-8 ("The present disclosure generally relates to computer-aided sports wagering."); 4:30-32 (Summary of the Invention) ("The present disclosure is generally directed to a computer-implemented system and related methods for facilitating a multi-layered wager[.]"). In particular, the claims of the '382 Patent recite an "improved wagering structure" for "placing parlay and teaser type multi-arm wagers" that can be carried out on a computer. *See* '382 Patent, 3:40-54 (Background of the Invention). Each claim of the '382 Patent is discussed in greater detail below and reproduced for the Court's reference.

Independent Claim 1, the only independent claim of the '382 Patent, claims a process for facilitating sports wagering using generic computer devices. *See* '382 Patent, 5:31-35 ("[T]he system and method are particularly well adapted to facilitate use with any bettor electronic device, including a fixed device, such as a computer workstation, or a portable/mobile electronic device, such as a smartphone or tablet device.").

> Independent Claim 1: A computer-implemented method for providing increased wagering flexibility to an individual bettor in the process of making a multiple armed event wager from an electronic wager input device having a display, the method comprising steps of:
>
> providing and accessing a wagering system of the type including a central computer system accessible by at least one network terminal in bi-directional electronic communication therewith via an electronic network and having a bettor viewable display, the central computer hosting an executable instruction set for computing intermediate odds between a minimum odds value and a

3

maximum odds value as a function of bettor-controlled modification and redistribution of equal starting shade values associated with respective individual arms of said multiple armed event wager used to determine whether the bettor has won a respective individual arm of said multiple armed wager;

selecting a plurality of teams by said bettor via said display, each selected team associated with an individual one of said events, to thereby establish a multiple team combined wager;

determining baseline odds for said multiple armed wager, said baseline odds based upon application of said equal starting shade values to each of the selected plurality of teams competing in the respective events;

defining a maximum point value by which the line of an individual team can be shaded;

defining a point increment value by which the shaded points can be adjusted;

calculating a minimum odds value of all teams winning, for purposes of the wager, when a maximum positive shade is applied to the initial line of every team included in the wager;

calculating the maximum odds of all teams winning, for purposes of the wager, when a maximum negative shade is applied to the initial line of every team included in the wager;

choosing, by said bettor via said display, a quantity of points to shade the initial lines of each of said respective selected teams and choosing a positive or negative shading direction in which to apply said chosen quantity of points to each said starting line, wherein said step of choosing results in a bettor-defined redistribution of said chosen quantity of points;

combining the chosen quantity of points shaded for each team to obtain a total point shade value;

calculating, as a function of the total point shade value, respective revised odds for the wager, the revised odds for the wager being intermediate of the respective calculated minimum and calculated maximum odds values; and

placing the wager at the calculated revised odds.

'382 Patent, Claim 1.  The remaining claims depend from Independent Claim 1 and fail for similar reasons.[2]

---

[2] Claims 2-18 depend from Claim 1.  Claims 2-4 and 10-12 add additional rules to the wagering scheme recited in Claim 1 using the same computer components.  Claims 5-8 and 14-18 provide

## III.    LEGAL STANDARDS

### A.    *Patentable Subject Matter Under 35 U.S.C. § 101 and Alice/Mayo*

Properly granted patents claim inventions, not abstract ideas or mere implementation of abstract ideas using generic computer technology.  Section 101 mandates that, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  Courts "have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  The concern behind these excepted categories is "one of pre-emption"—if an inventor could obtain patent protection over these "building blocks of human ingenuity," then the patent scheme would undermine, not promote, future innovation.  *Id.* (citations omitted)

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), the Supreme Court established a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217.  First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one").  *Id.* (citation omitted).  If so, the next step is to look for an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself'" ("step two") (collectively, the "*Alice/Mayo* framework").  *Id.* at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).  When analyzing step one of this framework in the context of "computer-implemented" claims, a helpful inquiry is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea."  *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (quoting *Enfish, LLC v.*

___

steps for calculating odds in the wagering scheme recited in Claim 1 using the same computer components.  And Claims 9 and 13 add directions for displaying odds information to the user using the same computer display recited in Claim 1.

*Microsoft Corp.,* 822 F.3d 1327, 1335 (Fed. Cir. 2016).

**B.      *Patentable Subject Matter is a Threshold Legal Issue Appropriately Decided on a Motion for Judgment on the Pleadings Pursuant to Rule 12(c)***

"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation and internal quotation marks omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted).

Subject-matter eligibility under Section 101 is a "threshold inquiry" and a question of law. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd*, *Bilski v. Kappos*, 561 U.S. 593 (2010). Courts can thus resolve Section 101 challenges on motions for judgment on the pleadings. *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352-55 (Fed. Cir. 2014) (affirming the lower court's grant of judgment on the pleadings based on Section 101); *Curb Mobility, LLC v. Kaptyn, Inc.,* 434 F. Supp. 3d 854, 857-58 (D. Nev. 2020) (granting motion for judgment on the pleadings on Section 101 grounds). Moreover, courts, including those in this District, recognize that Section 101 challenges can be resolved without undertaking claim construction. *See, e.g., Curb Mobility, LLC,* 434 F. Supp. 3d. at 861-62; *Global Cash Access, Inc. v. NRT Tech. Corp.*, 2016 WL 1181669, at \*4 (D. Nev. March 25, 2016) ("Plaintiff's general references to disputed claim terms fail to demonstrate that the Court cannot ascertain the basic character of the [patent's] subject matter without claim construction." (internal quotation marks and citation omitted)).

**IV.    THE '382 PATENT IS INVALID UNDER 35 U.S.C. § 101 BECAUSE IT CLAIMS A PATENT-INELIGIBLE ABSTRACT IDEA**

This case should be dismissed under Fed. R. Civ. P. Rule 12(c) in its entirety and with prejudice because the '382 Patent fails to qualify for patent protection under 35 U.S.C. § 101 under both steps of the *Alice/Mayo* analysis. No amount of repleading can fix this.

…

…



At step one, the claims of the '382 Patent are directed to the patent-ineligible abstract idea of managing a multi-game sports wager.[3]  At step two, the claims of the '382 Patent fail to provide any saving "inventive concept" sufficient to transform the abstract idea into a patent-eligible invention.  In other words, there is nothing claimed beyond the abstract idea itself, and the limitations of the asserted claims recite only well-understood, routine, and conventional computer hardware and software functions.

### A.    *Alice/Mayo Step 1: The '382 Patent is Directed to the Abstract Idea of Managing a Multi-Game Sports Wager*

Inventions that recite fundamental economic practices or products of human mental processes have repeatedly been held to be patent-ineligible abstract ideas, even when limited to a particular technological environment.  *See, e.g., Alice*, 573 U.S. 208 at 219 ("Like the risk hedging in *Bilski*, the concept of intermediated settlement is a fundamental economic practice long prevalent in our system of commerce[.]" (citations and internal quotation marks omitted)); s*ee also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) (listing price optimization, intermediated settlement, risk hedging, use of advertising as an exchange or currency, data collection, and generating tasks in an insurance organization as abstract "fundamental economic concepts"); *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015) (invalidating claims because their core concept was "inherently abstract" and "their implementation, which consist[ed] of standard technology like browsers, servers, and networks, ha[d] nothing inventive whatsoever about it.").  As discussed below, the '382 Patent, which is directed to the abstract idea of managing a wagering game, is precisely the sort of human economic practice that courts have repeatedly warned constitutes ineligible subject matter.

The concept of managing a wagering game is an abstract idea as old as betting itself and akin to the "fundamental economic practices" that have repeatedly been held to be patent-ineligible abstract ideas.  *See In re Smith,* 815 F.3d 816, 818 (Fed. Cir. 2016) (concluding that claims

---

[3] In particular, Claims 1-4 and 10-12 provide the rules for the claimed wagering scheme.  Claims 5-8 and 14-18 merely add an explanation of how the odds are to be calculated.  And Claims 9 and 13 provide directions for displaying odds information to the user.

7

"directed to rules for conducting a wagering game[] compare to other 'fundamental economic practice[s]' found abstract by the Supreme Court" (quoting *Alice*, 573 U.S. at 220)); *Planet Bingo, LLC v. VKGS LLC,* 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (analogizing claims for "managing a game of Bingo" to the invalid claims in *Alice* and *Bilski).*  Indeed, a wagering game is, effectively, a method for exchanging and resolving financial obligations based on probabilities.  *See, In re Smith,* 815 F.3d at 818-819.  The '382 Patent explicitly confirms this:

> Due to the sheer magnitude of the gambling industry, there is an entire industry dedicated to providing gambling-related information, such as the current odds for various outcomes of a sporting event. Bookmakers use odds to balance the total amount of money bet on each team participating in a particular event, so as to protect the individual or establishment offering, or taking, the bet from losing money. For example, by establishing a point spread, bookmakers will aim to guarantee a profit by achieving a "balanced book," either by getting an equal total amount of bets for each outcome or (when they are offering odds) by getting the amounts wagered on each outcome to reflect the odds.

'382 Patent at 1:19-31.

Thus, it is not surprising that courts have routinely held that similar concepts were directed towards patent-ineligible abstract ideas.  *See In re Smith,* 815 F.3d at 818 (rules for conducting a wagering game); *OIP Techs., Inc.*, 788 F.3d at 1362 (offer-based price optimization); *Planet Bingo, LLC*, 576 F. App'x at 1007–08 (methods of managing a game of bingo).  Courts in this District have also found that similar concepts were directed towards ineligible subject matter. *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483-RFB-NJK, 2018 WL 1020120, at *19 (D. Nev. Feb. 22, 2018) (holding that claims "directed to altering the rules of the game regarding slot games" are directed to a patent-ineligible concept), *aff'd*, 756 F. App'x 994 (Fed. Cir. 2019); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 2:16-cv-00857-RCJ-VCF, 2016 WL 4521682, at *7, *9 (D. Nev. Aug. 29, 2016) (holding that claims directed to "using information from game events to manage wagers" and "facilitating wagering in a game" are abstract ideas that are not patentable).  There is nothing in the claims or the specification of the '382 Patent that warrant a different conclusion.

But even leaving aside those precedents, the abstract nature of the claims is facially apparent.  Each step of Claim 1 recites at a high-level of abstraction certain fundamental economic



activities capable of being performed by humans, mentally or with a pen and paper—but implemented instead with generic computer hardware and software. *See, e.g.*, '382 Patent at Claim 1 ("selecting a plurality of teams by said bettor," "determining baseline odds for said multiple armed wager," "defining a maximum point value," "defining a point increment value," "calculating a minimum odds value of all teams winning," "calculating the maximum odds of all teams winning," "choosing, by said bettor via said display, a quantity of points to shade the initial lines," "combining the chosen quantity of points shaded for each team," "calculating, as a function of the total point shade value, respective revised odds for the wager," and "placing the wager."). Not a single one of these steps is different from what odds makers, bettors, houses, and side hustlers have been doing by hand in wagering games for generations. And simply because a computer (or even a calculator) could automate this process or make it easier does not change that managing a multi-game wager is a known, abstract concept.

The same holds true for the remaining claims of the '382 Patent. Humans, mentally or with a pen and paper, can likewise apply the additional rules (*see* Claims 2-4 and 10-12) for the claimed wagering scheme and calculate the corresponding odds (*see* Claims 5-8 and 14-18). In applying these rules and calculating the odds, humans can also arrange data as recited in Claims 9 and 13. The mere addition of generic computer components, such as a "central computer system" and "display," do not save them from being directed to an abstract idea. *See, e.g.*, *Elec. Power Grp. LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016) (holding that claims reciting collecting data from multiple data sources, analyzing the data, and displaying the results were directed to a patent-ineligible abstract idea).

### B. *Alice/Mayo Step 2: The Asserted Claims Lack an Inventive Concept*

The claims of the '382 Patent fail step two as well. Under step two, the Court "looks more precisely at what the claim elements add" to determine if "they identify an inventive concept *in the application* of the ineligible matter to which . . . the claim is directed." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (ellipsis in original) (emphasis added) (citation omitted).

Whether viewed individually, collectively, or in an ordered combination, the claims of the '382 Patent contain no inventive concept in the application of the ineligible matter. Nor could Plaintiff reasonably allege as much. The '382 Patent admits that software was utilized to facilitate multiple-armed-event wagering before the application date of the '382 Patent. '382 Patent, 3:4-9.[4] The '382 Patent describes computers in only the most generic terms (*e.g.*, "computer," "computer workstation," "smart device," "personal computer," etc.). '382 Patent, 8:55-63, 9:17-21. And the claimed generic computer components are used merely as tools to process rules for multi-game sports wagering and to display related information. Invocation of conventional components for their conventional use is insufficient to transform an ineligible abstract idea into a patent-eligible invention. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." (quoting *Alice*, 573 U.S. at 225)). Because there is nothing else in the claims regarding the application of this ineligible matter, the '382 Patent fails to satisfy step two.

To the extent Plaintiff contends that the alleged inventive concept is found within a purported innovation to the wagering structure for multi-game sports wagering itself, such as a variation in how shading is performed, that would reflect a misunderstanding of the applicable law. Indeed, the Federal Circuit has cautioned courts not to conflate allegedly innovative abstract ideas with the requisite "innovation in the non-abstract application realm." *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019). In particular, claims are still found to be ineligible when "their innovation is an innovation in ineligible subject matter." *Id.*

…

---

[4] This is consistent with Plaintiff's own representations, which admit that "*virtually any conventional wagering system*[] generally incorporates a central computer system through which network terminals . . . communicate electronically, in a bidirectional manner, during the process of placing a wager[.]" *See* Dkt. 65-3 at 1 (emphasis added).



Here, the only purported innovation claimed by the '382 Patent is the ability to "modify the conventional fixed value multiple-armed betting structure through the incorporation of a unique 'sliding' bet methodology through which a bettor may apply a variable, non-uniform, distribution of shading to point spreads and thereby increased input and control over the application of shading vis-à-vis individual teams comprising a multiple team wager[.]"  Ex. 4 at 12 (emphases omitted).  The '382 Patent recognizes this, admitting:

- an "entire industry dedicated to providing gambling-related information, such as the current odds for various outcomes of a sporting event" existed before the application date of the '382 Patent;[5]

- event wagering, including multiple armed event wagering, was known before the application date of the '382 Patent;[6] and

- in multiple-armed-event wagers, such as in conventional parlay and teaser-type multi-game sports wagering, the concept of shading was known before the application date of the '382 Patent.[7]

Because this is simply a method for a particular type of wagering or at most an "innovation in ineligible subject matter"—i.e., an idea that is an alleged advance upon an abstract idea—the Court should reject any such argument.  *See SAP Am., Inc.*, 898 F.3d at 1163 ("An advance of that nature is ineligible for patenting.").

In sum, the claims of the '382 Patent are directed to a patent-ineligible abstract idea and lack an inventive concept sufficient to transform the claims into a patent-eligible invention.  Thus, every claim of the '382 Patent is invalid under 35 U.S.C. § 101.

---

[5] '382 Patent at 1:19-22.

[6] *Id.* at 1:16-19 ("The business of sporting event gambling is a multi-billion dollar industry, especially in places like Nevada, and other geographical areas outside the United States, where gambling is legal."); 1:63-66 ("Different wagering schemes, or types of bets, have been developed over the years to provide bettors with a variety of betting options beyond that of placing a wager on a single game.").

[7] *Id.* at 2:47-48. The examiner noted during prosecution that "[a]pplicant has not claimed to have invented all of the above elements of the wagering scheme of wagers, odds, point spreads, shading. These are all familiar and well-known aspects of parlay betting."  Ex. 2 at 3.



DICKINSON WRIGHT
ATTORNEYS AT LAW

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant judgment on the pleadings that the claims of the '382 Patent are invalid under 35 U.S.C. § 101 and dismiss this case in its entirety with prejudice.

DATED this 12th day of November 2021.

DICKINSON WRIGHT PLLC

*/s/: Michael N. Feder*
MICHAEL N. FEDER (NV Bar No. 7332)
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89113

**ARNOLD & PORTER LLP**
EVAN M. ROTHSTEIN
PATRICK B. HALL
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202

**ARNOLD & PORTER LLP**
MICHAEL J. GERSHONI
601 Massachusetts Ave., NW
Washington, District of Columbia 20001

*Attorneys for Defendants Stadium Technology Group, Inc. and GVC Holdings, PLC*

12

**CERTIFICATE OF SERVICE**

The undersigned, an employee of Dickinson Wright PLLC, hereby certifies that on the 12th day of November 2021, a copy of **DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS** was served electronically to all parties of interest through the Court's CM/ECF system as follows:

FISHERBROYLES, LLP
Rob L. Phillips, Esq.
Email:  rob.phillips@fisherbroyles.com
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

*Attorneys for Plaintiff Pure Parlay, LLC*

*/s/: Dianne M. Kelling*
An employee of Dickinson Wright PLLC

13