**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER (Nevada Bar No. 7332)
Email: mfeder@dickinsonwright.com
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel: (702) 550-4440
Fax: (844) 670-6009

**ARNOLD & PORTER LLP**
EVAN M. ROTHSTEIN (*Admitted Pro Hac Vice*)
Email: evan.rothstein@arnoldporter.com
PATRICK B. HALL (*Admitted Pro Hac Vice*)
Email: patrick.hall@arnoldporter.com
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202
Tel: (303) 863-1000
Fax: (303) 832-0428

**ARNOLD & PORTER LLP**
MICHAEL J. GERSHONI (*Admitted Pro Hac Vice*)
Email: michael.gershoni@arnoldporter.com
601 Massachusetts Ave., NW
Washington, District of Columbia 20001
Tel: (202) 642-5000
Fax: (202) 942-5999

*Attorneys for Defendants Stadium Technology Group, Inc. and GVC Holdings, PLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PURE PARLAY, LLC a Nevada Limited Liability Company,<br><br>                    Plaintiff,<br><br>         v.<br><br>STADIUM TECHNOLOGY GROUP, INC., a Nevada Corporation, and GVC HOLDINGS, PLC, a company incorporated in the Isle of Man,<br><br>                    Defendants. | Case No. 2:19-cv-00834-GMN-BNW<br><br>**DEFENDANTS' RULE 12(c) REPLY MOTION FOR JUDGMENT ON THE PLEADINGS** |



1

Case 2:19-cv-00834-CDS-BNW   Document 78   Filed 12/03/21   Page 2 of 10

Defendants Stadium Technology Group, Inc. and GVC Holdings plc (now known as Entain plc) (collectively "Defendants"), by and through their undersigned attorneys, respectfully file this Reply in support of Defendants' Rule 12(c) Motion for Judgment on the Pleadings (Dkt. # 74) (herein "Motion").

## I. INTRODUCTION

The issue before the Court—whether to permit this case to proceed on allegations of infringement of a facially invalid patent—is not unique. Indeed Courts in this District and elsewhere routinely resolve patent eligibility issues at the pleadings stage and often do so by dismissing a case. It does not matter that the Court has not yet engaged in claim construction; Plaintiff unsurprisingly fails to identify even a single term it contends requires construction. It does not matter that there is no factual record; Plaintiff identifies no facts obtainable through discovery that would bear on patent eligibility. It does not matter that a single examiner at the U.S. Patent and Trademark Office ("USPTO") allowed this patent to be granted; it is the purview of the Court to determine whether the subject matter claimed is ultimately permissible.

Even if the Court were to adopt Plaintiff's description of the '382 Patent's subject matter, the Court should still find that its claims are directed to an abstract idea. As the Federal Circuit explained in *Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc. et al.*, which Plaintiff cited but otherwise ignores in relevant part, courts in cases involving computer-implemented claims inquire "whether the claims are directed to a specific improvement in the capabilities of computing devices" to determine whether the subject matter is directed to an abstract idea.[1] Plaintiff makes no such assertion, nor could it.

And, regardless of whether the Court adopts Plaintiff's or Defendants' characterization of the abstract idea, Plaintiff articulates no inventive concept that could save the asserted claims. Instead, Plaintiff distorts the analysis by conflating novelty and non-obviousness with patent-eligibility to create the illusion that innovation in ineligible subject matter alone is sufficient to

---

[1] *See Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc. et al.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).



2

meet the "inventive concept" requirement.[2]  It is not.  Critically, Plaintiff neither rebuts Defendants' assertion that the asserted claims merely invoke conventional components for their conventional use nor identifies any aspect of the asserted claims that are directed to an improvement in the functioning of a computer.

Put succinctly, there is no reasonable basis to permit the '382 Patent to survive another day.  The '382 Patent should have never been granted in the first place.  No amount of discovery or claim construction would alter that reality.  If such factual issues existed, it was incumbent on Plaintiff to identify them.  Plaintiff did not.  Defendants should not be forced to expend additional resources defending against these dubious claims any further.

## II. NOT ALL GAMING RELATED PATENTS ARE INVALID BUT THE '382 PATENT IS

Plaintiff accuses Defendants of attempting to "create the perception that any gaming related subject matter is patent ineligible."  Dkt. # 77 ("Response"), 5.  That is not the case.  Defendants arguments regarding patent-eligibility are directed to the '382 Patent, not the industry-at-large.

It is certainly true that the USPTO continues to find subject matter in the gaming arts to be patent eligible and that Courts have stated that inventions in the gaming arts are not necessarily foreclosed from patent protection.  *Id.*  But, there is important context regarding these statements that Plaintiff has not addressed.

*First*, while Courts have stated that inventions in the gaming arts are not necessarily foreclosed from patent protection under § 101, the types of inventions that Courts have posited might pass muster are distinct from the claims at issue in this case.  For example, while Plaintiff cites to *In re Marco Guldenaar Holdings B.V.* for this general proposition, it is worth noting that the Federal Circuit held that the wagering patent-at-issue in that case was invalid under § 101.  *See*

---

[2] For example, Plaintiff repeatedly refers to the claimed invention as, among other things, a "novel advance over the prior art" (Response, 3), referring to the claimed wagering rules as not previously existing (Response, 8), etc.  Yet novelty and non-obviousness do not bear on whether the claims are directed to patent-eligible subject matter.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1336 (Fed. Cir. 2017) ("The novelty and nonobviousness of the claims under [35 U.S.C.] §§ 102 and 103 does not bear on whether the claims are directed to patent-eligible subject matter under § 101.").

Response, 5 (citing 911 F.3d 1157 (Fed. Cir. 2018)). The Court came to this conclusion despite the fact that, unlike here, the wagering game at issue in *In re Marco* utilized allegedly unconventional and "specifically-claimed dice" as opposed to generic computing components. *In re Marco*, 911 F.3d at 1160-61.

Relatedly, the general proposition expressed in *In re Marco* that patents in the gaming arts are not necessarily foreclosed upon was adopted from *In re Smith*, another Federal Circuit case analyzing—and ultimately invalidating—a wagering patent. *Id.* at 1162 (citing *In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016)). There, the Federal Circuit presented an example of the types of claims in the gaming arts that might pass muster; namely, those that are "directed to conducting a game using *a new or original deck of cards*." *In re Smith*, 815 F.3d at 819.[3] Unlike the example provided in *In re Smith*, there is nothing within the four corners of the '382 Patent that discusses, let alone claims, using new or original components.

*Second*, Plaintiff does not identify a single case in this District upholding the validity of claims directed to gaming arts that are implemented on a generic computing device, such as the '382 Patent. Instead, Plaintiff cites only to *CG Tech. Dev., LLC v. Big Fish Games, Inc*, which involved a claim directed to a gaming controller—not a game. *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 2:16-cv-00857-RCJ-VCF, 2016 WL 4521682, at *10 (D. Nev. Aug. 29, 2016). As the Court in *CG Tech*., explained:

> Claim 20 is not directed simply to authorizing access to a game based on age but to carrying out that purpose by using an arrangement of particularized computer components to implement an apparatus that never existed prior to November 1997: a video-game system with a wireless, personalized game controller. In other words, the claim has physical and tangible components that are directed to more than performance of an abstract idea.

*Id.* (internal quotations and citations omitted). The wireless controller claim at issue in *CG Tech*. is distinguishable from the wagering claims at issue here. Unlike the wagering claims of the '382 Patent, which are method claims implemented on generic computing components, Claim 20 of the patent-at-issue in *CG Tech*. was an apparatus claim directed to a purportedly new piece of physical

---
[3] Emphases added unless otherwise noted.



4

technology. *Id.*

*Third*, it does not matter that the USPTO continues to find certain subject matter in the gaming arts patent-eligible.[4] The Federal Circuit has repeatedly re-affirmed that the USPTO's Patent Eligibility guidance lacks judicial authority. *See, e.g.*, *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1376 (Fed. Cir. 2021). And, it is indisputable that assessing the validity of issued patents is within the purview of the Court. To the extent an examiner allowed a patent to issue that contradicts established subject matter eligibility precedent, such as the '382 Patent, the Court is on sturdy ground to invalidate it, even at the pleadings stage. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352-55 (Fed. Cir. 2014) (affirming the lower court's grant of judgment on the pleadings based on Section 101); *Curb Mobility, LLC v. Kaptyn, Inc.,* 434 F. Supp. 3d 854, 857-58 (D. Nev. 2020) (granting motion for judgment on the pleadings on Section 101 grounds); *Relevant Holdgs., LLC v. MindGeek USA Inc.,et al.,* No. 2:21-cv-03174, 2021 U.S. Dist. LEXIS 164331 at *10, *21 (C.D. Cal. Aug. 30, 2021) (invalidating patents at pleadings stage under 35 U.S.C. §101 despite patents having overcome patent-eligibility challenge at the USPTO).

### III. PLAINTIFF FAILS TO REBUT THE REALITY THAT THE CLAIMS OF THE '382 PATENT ARE DIRECTED TO A PATENT INELIGIBLE ABSTRACT IDEA

Defendants contend that the asserted '382 Patent claims are directed to managing a multi-game sports wager. *See* Motion, 6. Plaintiff proposes an alternative characterization—that the asserted claims are directed to "improvements in wagering technology, namely, a method for increasing wagering flexibility to an individual bettor in the process of making a multiple armed wager from an electronic wager input device (e.g., mobile smart phone) having a display." *See* Response, 3. This is a distinction without a difference—both characterizations are directed to patent-ineligible abstract ideas and both render the patent invalid.

In support of its position, Plaintiff posits that the Court should be instructed by the Federal Circuit's decision in *Core Wireless*. *See* Response, 6 ("[A] more relevant case to the one at hand

---

[4] Plaintiff relies on the Patent Trial and Appeal Board's decision in *Ex Parte Berndt Burghard* to support this proposition. Response, 5, n. 5 (citing Dkt. # 77-3). However, the claims at issue therein are distinguishable from the '382 Patent. The claims at issue in *Ex Parte Berndt Burghard* are apparatus claims directed to a specific gaming machine, not method claims implemented on generic computing devices. *See, e.g.*, Ex. 3, 14 ("Claim 1, *as a machine claim*, recites one of the enumerated categories of eligible subject matter in 35 U.S.C. § 101.").



involves the Court's analysis of an improved user interface for small screens such as a mobile device where the claims were found not directed to an abstract idea."). Defendants agree.

The Federal Circuit in *Core Wireless* explained that in determining whether subject matter was directed to a patent-ineligible abstract idea, the Court should ask "whether the claims are directed to a specific improvement in the capabilities of computing devices[.]" *Core Wireless*, 880 F.3d at 1361. In *Core Wireless*, the Court held that the asserted patent was directed to a specific improvement in the capabilities of computing devices because "[t]he disclosed invention *improves the efficiency of using the electronic device* by bringing together a limited list of common functions and commonly accessed stored data, which can be accessed directly from the main menu." *Id.* at 1363 (internal quotations and citations omitted). The Federal Circuit in *Core Wireless* likened the patent-at-issue to those in *Enfish*, *Thales*, *Visual Memory*, and *Finjan*, which dealt with patents directed to "a specific improvement to the way computers operate[,]"[5] the use of "inertial sensors in a non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object on a moving reference frame[,]"[6] "enhanc[ing] computer memory system[s][,]"[7] and "behavioral-based" virus scanning,[8] respectively. *See id.* at 1361–63.

Plaintiff has not—nor can it—factually contend that the '382 Patent, under either characterization, is directed to an improvement in the capabilities of computing devices, as the Federal Circuit instructs. The closest Plaintiff gets to making this assertion is in its discussion of Step Two under the *Alice* framework where it asserts that "the claimed method is not using a computer as a mere tool to facilitate an abstract idea but is instead recites a specific asserted improvement in computer capabilities (i.e., accepting wagers based on a bettor's input (e.g., manipulating the lines or point spreads and generating corresponding payouts)." Response, 9. But

---

[5] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (holding that the disclosed technique enabled faster searching and more effective storage of data than previous methods).

[6] *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348 (Fed. Cir. 2017) (holding that the disclosed technique enabled sensors to more efficiently track an object on a moving platform).

[7] *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (holding that the disclosed technique of "us[ing] [] programmable operational characteristics that are configurable based on the type of processor" enhanced computer memory).

[8] *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) (holding that the disclosed virus scanning technique improved computer functionality).

Plaintiff makes this statement without factual or legal basis. In fact, Plaintiff does not cite to a single portion of the '382 Patent for support. And, Claim 1 of the '382 Patent unambiguously states that it is a "computer-implemented method *for providing increased wagering flexibility*"—not a computer-implemented method to improve computer functionality by, *e.g.*, providing for faster searching and more effective storage, or enhancing memory, or generating user-interfaces more suitable for decreasing screen sizes.

Even adopting Plaintiff's characterization of the patented subject matter, "improving wagering technology" does not pass muster. Increasing wagering flexibility does not improve the functioning of a computer. And if it did, it was incumbent on Plaintiff to give some indication as to how in the Patent itself and also in its Response.

For the reasons discussed above and in Defendants' Motion, the Court should hold that the claims of the '382 Patent are directed to an abstract idea under either Plaintiff or Defendants' characterization.

### IV.   PLAINTIFF FAILS TO RECITE A SUFFICIENT INVENTIVE CONCEPT IN THE APPLICATION OF THE ABSTRACT IDEA TO SAVE ITS PATENT

The proper focus under Step Two of the *Alice* framework is whether there is an inventive concept "*in the application* of the ineligible matter to which . . . the claim is directed." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (ellipsis in original) (citation omitted). And, with respect to computer-implemented claims, whether the generic computing components *themselves* are used in non-conventional ways. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 225 (2014)). Plaintiff presents no arguments addressing these issues.

Instead, Plaintiff mistakenly focuses its Response on whether the claims are novel under § 102 and/or non-obvious under § 103. For example, instead of addressing whether the claims invoke unconventional components or conventional components for unconventional uses, Plaintiff



7

argues that performing the method steps of the asserted claims were "not possible because it did not exist" (*i.e.*, novelty) (Response, 8), that the independent claim *itself* was not conventional (*i.e.*, obviousness) (Response, 6-9), and that the claims present a "specific (and better) way of solving an identified problem associated with a bettor's lack of control and input over multiple team wagering options" (*i.e.*, obviousness) (Response, 9).[9,10] But, the Federal Circuit confirms that the novelty and nonobviousness of claims under 35 U.S.C. §§ 102 and 103 does not bear on whether the claims are directed to patent-eligible subject matter under § 101. *See Two-Way Media Ltd.*, 874 F.3d 1329, 1336, 39-40 (Fed. Cir. 2017) ("We find no error in the district court's determination to reject Two-Way Media's proffered material, as the court correctly concluded that the material was relevant to a novelty and obviousness analysis, and not whether the claims were directed to eligible subject matter.").

Plaintiff's approach is unsurprising as Defendants anticipated that instead of addressing whether there is an inventive concept in the application of the ineligible matter, as required, Plaintiff would argue that the inventive concept is found within the purported innovation to the wagering structure itself. Motion, 10. That is not the proper standard. Indeed, the Federal Circuit has cautioned courts not to conflate allegedly innovative abstract ideas with the requisite "innovation in the non-abstract application realm." *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019). In particular, claims are still found to be ineligible when "their innovation is an innovation in ineligible subject matter." *Id.* This is precisely the situation here (at best). In other words, even if Plaintiff's characterization is correct, its claims still cover an innovation within ineligible subject matter and that patent remains invalid.

In sum, the claims of the '382 Patent are directed to a patent-ineligible abstract idea and

---

[9] Plaintiff cites to *Visual Memory LLC v. NVIDIA Corp.* to support this proposition. However, the Court in *Visual Memory* did not address Step Two of the *Alice* framework. 867 F.3d 1253, 1262 (Fed. Cir. 2017) ("Because we conclude that the claims of the '740 patent are not directed to an abstract idea, we need not proceed to step two of the *Alice* test."). Thus, *Visual Memory* is inapposite.

[10] Plaintiff likewise presents a table with the heading "Relevant Limitations Directed to Inventive Concept" that merely parrots the claim language without any further explanation. This is precisely the type of unsupported attorney argument that the Court can and should ignore.



lack an inventive concept sufficient to transform the claims into a patent-eligible invention. Plaintiff presented no meaningful argument to the contrary, or otherwise identified factual disputes that would preclude granting Defendants' Motion. Thus, every claim of the '382 Patent is invalid under 35 U.S.C. § 101.

## V. CONCLUSION

For all of the foregoing reasons, as well as those reasons articulated in its Motion, Defendants respectfully request that the Court grant judgment on the pleadings that the claims of the '382 Patent are invalid under 35 U.S.C. § 101 and dismiss this case in its entirety with prejudice.

DATED this 3rd day of December 2021.

DICKINSON WRIGHT PLLC

*/s/: Michael N. Feder*
MICHAEL N. FEDER (NV Bar No. 7332)
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89113

**ARNOLD & PORTER LLP**
EVAN M. ROTHSTEIN
PATRICK B. HALL
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202

**ARNOLD & PORTER LLP**
MICHAEL J. GERSHONI
601 Massachusetts Ave., NW
Washington, District of Columbia 20001

*Attorneys for Defendants Stadium Technology Group, Inc. and GVC Holdings, PLC*



9

## CERTIFICATE OF SERVICE

The undersigned, an employee of Dickinson Wright PLLC, hereby certifies that on the 3rd day of December 2021, a copy of **DEFENDANTS' REPLY RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS** was served electronically to all parties of interest through the Court's CM/ECF system as follows:

FISHERBROYLES, LLP
Rob L. Phillips, Esq.
Email: rob.phillips@fisherbroyles.com
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

*Attorneys for Plaintiff Pure Parlay, LLC*

                                                */s/: Dianne M. Kelling*
                                                An employee of Dickinson Wright PLLC

